UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X
LORETTA WATKINS

                    Plaintiff,

            – against –

SELIP & STYLIANOU, LLP
DAVID A. COHEN

                    Defendants.
---------------------------------------------------------------------- X

Index No.: 1:20-cv-2810

**COMPLAINT
AND
JURY DEMAND**

## ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff, Loretta Watkins ("Ms. Watkins"), by her attorneys CAMBA Legal Services and The Law Office of Ahmad Keshavarz, brings suit against debt collection law firm, Selip & Stylianou, LLP ("Selip") and Dave A. Cohen, an attorney at Selip, for violating the Fair Debt Collections Practices Act, 15 U.S.C. § 1692 *et. seq.* and for violating N.Y. General Business Law § 349 for attempting to collect a non-existent judgment, and allege as follows:

### PRELIMINARY STATEMENT

Loretta Watkins is a senior citizen who lived with her husband in Queens until his recent death. Ms. Watkins's husband had a long battle with prostate cancer and Ms. Watkins devoted most of her time to taking care of him as well as working as an administrative assistant, a job she took tremendous pride in. In September 2019, five months after her husband's passing, Ms. Watkins received a notice of garnishment from Defendants saying that Ms. Watkins owed a judgment of over $12,000. In fact, Ms. Watkins vacated the judgment years before. Worse still, after Ms. Watkins vacated the judgment, she settled the debt, timely sending monthly payments for over four years. And to add insult to injury, under the settlement Selip had agreed it could

1

only enter a judgment for $4,000 minus the settlement payments received. Even that amount could only be entered if Ms. Watkins defaulted on the settlement, which she did not. Ms. Watkins felt confusion, distress, and anger, because any judgment had long been vacated, and she had paid off the debt. Her husband had recently passed, and she was trying to put her life back together when this garnishment threatened to ruin it, asking for money she did not have and did not owe. Selip has a pattern and practice of executing on judgments that were vacated and collecting on debts that have been settled and paid.

## JURISDICTION AND VENUE

1. The Court has subject matter jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1331 because the dispute involves predominant issues of federal law under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et. seq.* ("FDCPA").

2. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

3. Venue in the Eastern District of New York is proper because all or a substantial part of the events or omissions giving rise to the claims in this action occurred in Queens County, New York.

## PARTIES

4. Ms. Watkins is a natural person who resides in Queens County, New York.

5. Ms. Watkins is a "consumer" as defined by 15 U.S.C. § 1692 (a)(3) because Ms. Watkins allegedly owed a "debt" to Midland Funding, LLC. Ms. Watkins's alleged obligation is a "debt"

2

under 15 U.S.C. § 1692(a)(5) because it was incurred primarily for personal, family, or household purposes. The collection lawsuit stated that the debt arose from a "consumer credit transaction."

6. Defendant Selip & Stylianou, LLP ("Selip") is a debt collection law firm and limited liability company organized under the laws of New York. Selip has its principal place of business at 199 Crossways Park Drive, PO Box 9004, Woodbury, New York 11797-9004. Selip engages in business in New York, and this suit arose out of Selip's business in New York.

7. Selip is a "debt collector" as defined in 15 U.S.C. § 1692(a)(6) because Selip regularly collects debts owed, due, or asserted to be due another. In addition, Selip uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts. Specifically, Selip regularly collects or attempts to collect, directly or indirectly, debts asserted to be due another by filing thousands of collection lawsuits, collecting putative judgments, and sending debt collection letters. Last year, in 2019, Selip filed over 4,000 collection lawsuits in Queens County alone.

8. David A. Cohen is an attorney who regularly signs many of Selip's consumer collection lawsuits, information subpoenas, bank restraints, garnishments, and collection letters. Mr. Cohen is therefore a debt collector as defined by 15 U.S.C. § 1692(a)(6).

9. Selip was formerly known as Cohen & Slamowitz and changed its name on December 5, 2014. All of the contact information for the firm remained the same, including the address where settlement payments are to be mailed.

10. Mr. Cohen was a principal at the firm when it was known as Cohen & Slamowitz. Upon information and belief, Mr. Cohen is a resident of New York.

11. Mr. Cohen personally engaged in the deceptive and unconscionable conduct towards Ms. Watkins, including, *inter alia*, signing the income execution falsely alleging that a judgment existed for over $12,000, and instructing the Marshal to garnish Ms. Watkins's wages, even though the judgment had been vacated and Ms. Watkins had paid the settlement.

12. Since Mr. Cohen's actions were on behalf of Selip, the term "Selip" applies jointly to the Mr. Cohen and Selip.

13. Selip has unlawfully attempted to collect a nonexistent debt arising from a vacated judgment against Ms. Watkins.

## STATEMENT OF FACTS

### Background on Loretta Watkins

14. Loretta Watkins is a senior citizen who lived with her husband in Queens until his recent death. Ms. Watkins's husband had a long battle with prostate cancer, and Ms. Watkins devoted most of her time to taking care of him as well as working as an administrative assistant.

15. During or around the year 2004, Ms. Watkins's husband was first diagnosed with cancer. Mr. Watkins's condition worsened over the years. In 2016, Mr. Watkins became very sick, and Ms. Watkins began spending much of her time taking care of him. On April 16, 2019, he passed away.

16. Around this time, Ms. Watkins was also dealing with a health issue of her own. In 2015, she was injured at her workplace, when a person accidentally sprayed paint into her eye. In June of 2019, Ms. Watkins returned to work after burying her husband. She was stressed and noticed that her vision was a bit blurred.

**Default Judgment Vacated and Collection Suit Settled**

17. In 2012, Midland Funding, through its attorneys Selip (then named Cohen & Slamowitz) sued Ms. Watkins in Queens County Civil Court for a debt she allegedly owed on a Chase credit card. The case was captioned, *Midland Funding, LLC v. Loretta Watkins*, Index Number 8375/2012, and sought to collect $11,404.00, plus interest and costs. **Exhibit A** (Collection Lawsuit).

18. Ms. Watkins believes the Chase card belonged to her late husband, who likely used both of their names to apply for it. Ms. Watkins did not use the card herself, and she did not believe there was any balance on it.

19. Process server Nasser H. Atrash swore in his Affidavit of Service that he served John Watkins, a "co-tenant," with the Summons and Complaint on May 8, 2012 and later mailed a copy to Ms. Watkins. **Exhibit B** (Affidavit of Service). However, Ms. Watkins never received the Summons and Complaint by mail or by any other manner, and did not know about the Collection Lawsuit.

20. Mr. Atrash is notorious for executing false affidavits of service. Mr. Atrash had his license revoked to serve process on or about January 29, 2014 after he was found to have, at least five times, falsely attested to service of process. **Exhibit C** (NYC Department of Consumer Affairs File on Nasser Atrash). Mr. Atrash appealed this decision and his appeal was rejected on July 7, 2014, with the DCA noting that Mr. Atrash's argument that he did not need to comply with process server reporting requirements was "without merit." *Id.* Mr. Atrash was found guilty by the DCA of 61 violations, including five counts of falsifying affidavits of service. Four of these five counts had Mr. Atrash falsely claiming to have served a summons and complaint on a relative of the defendant.

21. Given Mr. Atrash's history of executing affidavits of service falsely claiming service on a family member of the defendant, the affidavit of service claiming service on a "John Watkins," and Ms. Watkins never receiving the summons and complaint, it appears this was yet another instance of Mr. Atrash falsifying an affidavit of service.

22. On November 7, 2012, Selip used the false affidavit of service to obtain a default judgment against Ms. Watkins, a practice known as "sewer service." [1]Selip obtained a default judgment in the amount of $12,503.95. **Exhibit D** (Default Judgment). Ms. Watkins never received a copy of the default judgment or a notice of entry.

23. In early 2013, Ms. Watkins received a Notice of Garnishment in the mail. This was the first time Ms. Watkins became aware of the Collection Lawsuit.

24. On March 11, 2013, Ms. Watkins filed an Order to Show Cause to vacate the default judgment. **Exhibit E** (OSC). At the time, Ms. Watkins was not nor could have been aware of Mr. Atrash's history of filing false affidavits of service, and thus did not consider the possibility that her husband had not received the court papers at all.

25. On December 11, 2013, the civil court issued an order vacating the default judgment, vacating any income or wage garnishments, bank holds, or executions, and returning the matter to the court calendar. **Exhibit F** (2013 Order Vacating Judgment).

26. On March 5, 2014, Ms. Watkins entered into a Stipulation of Settlement ("Settlement") in court with Selip. The $11,404.40 amount sought in the Collection Lawsuit was settled for

---

[1] Plaintiff does not bring an FDCPA claim based on sewer service. That claim would be time barred under the FDCPA's one year statute of limitation. However, the sewer service is relevant for damages for Ms. Watkin's FDCPA claims that are not time barred: that Selip attempted to garnish her wages in 2019 after she had in fact vacated the judgment. First, the sewer service puts in context that Ms. Watkins was especially upset that Selip attempted to garnish her wages in 2019 because the underlying judgment was obtained by fraud. Second, FDCPA claims that are time barred may be relevant for determining the amount of statutory damages for the claims that are not time barred. See 15 U.S.C. § 1692k(b)(1) (factors to be considered in determining the amount of FDCPA statutory damages includes "the frequency and persistence of noncompliance by the debt collector.")

6

$4,000.00. The $4,000.00 was to be paid out in monthly payments of $75 due on or before the 14th of each month. The Settlement directed that each payment be made payable to Midland Funding and mailed to Cohen & Slamowitz at 199 Crossways Park Drive, P.O. Box 9001, Woodbury, New York 11797. That mailing address remained the same after the Plaintiff's firm changed its name from Cohen & Slamowitz to Selip & Stylianou.

27. The Settlement required, in the event of a default in monthly payments, Plaintiff's firm to mail Ms. Watkins a notice of default. If Ms. Watkins did not cure the default within 10 days, Plaintiff's firm could enter judgment for the Settlement amount, $4,000 – not the lawsuit amount of $12,332.95 -- plus interest, after crediting Ms. Watkins for any payments made. If Ms. Watkins completed the settlement payments, Plaintiff's counsel would send Ms. Watkins a Settled in Full letter after the settlement amount had been paid. **Exhibit G** (Settlement)**.**

28. Pursuant to the Settlement, beginning in April of 2014, Ms. Watkins sent regular monthly checks payable to Midland Funding to Selip at the address listed on the Settlement.

29. On September 24, 2014, Selip sent Ms. Watkins a letter falsely stating that the payment of $75.00, due September 20, 2014, had not been received. **Exhibit H** (September 24, 2014 Default Letter). The Default Letter was on the firm letterhead and was signed by attorney David A. Cohen, impliedly representing to Ms. Watkins that the firm generally and Mr. Cohen specifically had performed a meaningful attorney review of the facts and circumstances of the account and came to a professional legal judgment that there was a default. However, any meaningful review would have required an attorney review of the Settlement and the payment history to conclude that there was in fact a default. As the letter alleged there was a default when in fact there was none, on information and belief, Mr. Cohen generally and the firm specifically failed to perform a meaningful attorney review.

7

30. On October 17, 2014, Ms. Watkins sent a letter to Cohen by certified mail return receipt requested disputing that she had missed any payments. **Exhibit I** (October 17, 2014 Dispute Letter). The Dispute Letter itemized by check number and date issued every check she had made to Cohen. Notably, she included a copy of check number 2870, dated September 17, 2014, for the payment that Cohen claimed was never received. Ms. Watkins asked for a response. Cohen ignored her letter.

31. Ms. Watkins continued to comply with the Settlement dated March 5, 2014. She mailed out her monthly payments to Selip for several years afterwards, through August of 2018, at which time she believed that she had paid off the entire $4,000.00. Ms. Watkins timely mailed all or nearly all of the payments under the terms of the Settlement. Selip cashed the majority, but oddly not all, of the checks Ms. Watkins mailed.

32. Selip never entered nor moved to enter a judgment based on a putative default of the Settlement. A review of the contents of the court file and case summary shows no judgment had been entered or even applied for after Ms. Watkins obtained the December 11, 2013 order vacating the default judgment.

**Selip Attempts to Garnish Ms. Watkin's Wages Based on the Vacated Judgment**

33. Over a year after Ms. Watkins sent out her final payment, Selip mailed her another Notice of Garnishment, dated September 13, 2019, and an undated Income Execution. **Exhibit J** (2019 Notice of Garnishment and Income Execution). Ms. Watkins believes the Notice of Garnishment and Income Execution were also mailed to her employer, but she was on leave at the time.

34. The Notice of Garnishment indicated that Ms. Watkins owed a total of $18,027.21 to

8

Midland Funding, LLC, including a judgment of $12,332.95—more than three times the amount in the Settlement—and $4,823.31 in interest. *Id.*

35.     The Income Execution stated that Ms. Watkins had a judgment against her that was entered on November 7, 2012 for $12,503.95 – the judgment that was, in fact, vacated. It falsely alleged that Ms. Watkins owed a balance of $12,338.95 on the judgment, plus accrued interest in the amount of $4,795.88, totaling $17,134.83 through September 2, 2019. The income execution was signed by David A. Cohen, Esq. of Selip & Stylianou, LLP. *Id.*

36.     The FDCPA prohibits the false representation or implication that a communication is from an attorney when it is not. 15 U.S.C. § 1692e(3). When a written communication is issued under a law firm name or in the name of an attorney, the attorney must make an individual professional determination that the allegations in the written communication are correct in order for that written communication to be considered to be coming "from an attorney" pursuant to § 1692e(3).

37.     Defendants Mr. Cohen and Selip falsely represented or implied to the least sophisticated consumer that it had performed meaningful attorney review such that they came to a professional judgment that the allegations in their communications were true. Specifically, Mr. Cohen and Selip falsely represented that Ms. Watkins had a valid, enforceable judgment against her. The least sophisticated consumer could easily believe that the Income Execution was sent by an attorney authorized to take legal action to enforce a valid judgment, because it is signed by Mr. Cohen and contains Selip's name and address.

38.     Neither Mr. Cohen nor any other attorney at Selip performed a meaningful review of Ms. Watkins's account. If an attorney had done so, they would have easily discovered that the

9

judgment was vacated on March 12, 2013. Even the simple act of checking the court's records or typing in the name of the consumer into the public and free eCourts website (**Exhibit K** (eCourts Screens for Collections Case) would have shown that the judgment was vacated.

39. Further, if Mr. Cohen or any other attorney at Selip had performed a meaningful review of Ms. Watkin's account, they would have discovered the Settlement, the vacatur of the judgment, and Ms. Watkins's payment of the balance agreed to in that Settlement.

### Defendants' Misconduct Inflicted Damages on Ms. Watkins

40. Ms. Watkins was distressed, and she believed that her debt was paid. She did not know why Midland and Selip were coming after her again.

41. During this time, Ms. Watkins was dealing with the recent death of her husband, who had suffered from prostate cancer.

42. Additionally, she had recently suffered a stroke in her eye, which was partly caused by stress. Ms. Watkins's stress levels increased and her eye issues worsened after receiving the Notice of Garnishment and Income Execution.

43. After receiving the Notice of Garnishment and Income Execution, Ms. Watkins could not sleep and took medication to fall asleep. She also lost her appetite, and when she was able to eat, ate poorly.

44. This case was on her mind all the time. She was afraid that Selip would take money from her bank account. She was worried that Selip would garnish her income, which consisted of social security and a pension. She was embarrassed by having her employer learn of a prior judgment against her by the employer receiving garnishment papers.

45. She checked the balance of her accounts obsessively, because she lived in constant fear

10

that her money would suddenly be gone.

46. She wondered how, with the recent death of her husband, she would pay her mortgage, light, and gas bills, and what would happen if she missed payments for those bills.

47. She was frustrated and angry that she had vacated the judgment and meticulously complied with the Settlement. She was frustrated and angry that she sent payments for over four years, yet Defendants nonetheless attempted to garnish her wages anyways and demanded the full amount of the suit instead of the amount they had agreed on. Ms. Watkins had to spend time and effort in getting Selip to cease garnishment attempts. When she sought an explanation and an accounting, she was ignored.

### Ms. Watkins Asks Selip to Acknowledge She Vacated the Judgment and Complied with the Settlement and to Provide an Accounting for All Payments

48. On or about November 1, 2019, Ms. Watkins mailed a letter to Selip notifying it that it had been attempting to enforcement a judgment that was vacated in 2012, demanding enforcement attempts cease, and requesting that Selip confirm the same in writing. Ms. Watkins asked Selip to provide an explanation as to why it was attempting to garnish on a vacated judgment. Further, Ms. Watkins asked Selip to confirm that she had in fact complied with the settlement, and requested that Selip send Ms. Watkins an accounting of all payments received if it believed that she did owe money. Ms. Watkins' letter contained the following enclosures: the Notice of Garnishment and Income Execution, the court order dated December 11, 2013 vacating the default judgment, the March 5, 2014 Settlement, copies of her checks paying off the settlement amount, and her October 17, 2014 Dispute Letter to Cohen & Slamowitz. **Exhibit L** (November 2019 Letter) (without exhibits).

49. In response, Selip mailed Ms. Watkins a terse letter dated December 4, 2019. The letter

11

ignored Ms. Watkins's demands for an explanation, an accounting, or a confirmation that Ms. Watkins had complied with the terms of the Settlement. Instead, Selip simply stated that the court requires a Stipulation Discontinuing Action be filed, which would end the lawsuit. The proposed stipulation indicated that the case, including all counterclaims, be discontinued without prejudice without costs to either party as against the other. **Exhibit M** (December 4, 2019 Letter and Stipulation)**.**

50.     It is not clear why Selip would only dismiss the case without prejudice, since Ms. Watkins supplied Selip with proof of payment showing compliance with the Settlement.

51.     There was no legitimate reason for Selip to insist on preserving its right to bring another case against Ms. Watkins for the **s**ame claim she had settled and paid over the course of 4 years. It is particularly troubling given that Selip was already trying to collect on the nonexistent judgment.

52.     On December 4, 2019, Ms. Watkins's place of employment, from which she was taking time off, received a letter from New York City Marshal Gregg E. Bienstock, directing Midland to release the Execution. **Exhibit N** (Marshal Letter).

53.     In response, CAMBA Legal Services sent Selip a letter on behalf of Ms. Watkins, dated December 11, 2019, stating that Ms. Watkins is our client, that we believe her case should be discontinued with prejudice, and enclosing our proposed stipulation to discontinue. **Exhibit O** (December 11, 2019 Letter).

54.     Selip responded to our correspondence with a letter dated December 17, 2019, similar to the one sent to Ms. Watkins, confirming that Ms. Watkins's last payment was in August of 2018 and requesting that we sign their proposed stipulation. Selip enclosed a stipulation discontinuing

the action with prejudice. **Exhibit P** (December 17, 2019 Letter).

55. On January 21, 2020, CAMBA Legal Services filed the stipulation to discontinue with prejudice at the Queens County Civil Court. **Exhibit Q** (2020 Stipulation).

### Selip Has a Pattern and Practice of Attempting to Collect on Individuals Where no Judgment Exists or When a Case has Been Settled

56. A PACER search for cases filed against Selip & Stylianou and Cohen & Slamowitz yields 112 results. Nearly all of these complaints allege violations of the Fair Debt Collections Practices Act.

57. Several of these lawsuits alleged conduct similar to that alleged herein, including collecting on a nonexistent judgment, failing to account for checks received pursuant to a settlement, and demanding payment for monies already paid pursuant to a settlement. Based on the complaints in those cases, Plaintiff reasonably believes that evidence produced in discovery will show that Selip willfully or knowingly engages in a pattern and practice of collecting on debts that arise from vacated judgments or that have otherwise been settled.

58. In one case, alleging facts nearly identical to Ms. Watkins's experience, Selip obtained a default judgment against a consumer who was not served, then entered into a settlement stipulation with the consumer vacating the judgment, collected and cashed all but two of the consumer's payments over the course of four years, and then sent the consumer a letter falsely stating that there was a substantial balance outstanding. **Exhibit R** (Complaint in *Sparkes v. Selip and Stylianou,* No. 1:17-cv-04601 (E.D.N.Y. 2017).

59. Other lawsuits against Selip have alleged similar conduct: *Steven Italiano, et. al., v. Midland Funding, LLC, et al.,* 2:14-cv-00018 (E.D.N.Y. Jan. 2, 2014) (settling a debt with a consumer and later entering a default judgment and attempting to collect for an amount four

13

times higher than settled for); *Minerva Montanez v. Selip and Stylianou*, 7:17-cv-00027 (E.D.N.Y. May 11, 2017) (stipulating to vacate a judgment and settling a case and then demanding payment of the amount of the vacated judgment a month later); *Fine v. Selip and Stylianou,* 1:18-cv-07032 (E.D.N.Y. Dec. 11, 2018) (stipulating to vacate a judgment against a consumer and failing to adjust the balance due each time the consumer tried to make a payment pursuant to the stipulation); and *Laurie Longmore v. Cohen and Slamowitz*, 7:09-cv-00104-GTS-GJD (N.D.N.Y. Jan. 27, 2009) (entering into a payment plan with a consumer by telephone, accepting payments from the consumer, who was complying with the agreement, and later suing the consumer, obtaining a default judgment, and freezing her bank account).

60. Selip has settled each of these lawsuits except *Italiano*, which is pending. Both *Montanez* and *Italiano* also involve Midland.

61. Selip's operations across New York broadly targets consumers at large by soliciting payments that are not owed and causing emotional distress and other injuries.

## FIRST CLAIM FOR RELIEF
**Violations of the Fair Debt Collection Practices Act**

62. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as though fully set forth herein.

63. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); see also *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair

14

consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

64. Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." See S. Rep. No. 382, 95th Con., 1st Sess. 5, ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); *Jacobson v. Healthcare Fin. Servs.,* 516 F.3d 85, 91 (2d Cir. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

65. This action falls within the FDCPA for the following reasons:

   a. The obligation Defendants allege is owed to them is a "debt" as defined by 15 U.S.C. § 1692(a)(5) because it derives from a credit card account that was used primarily for family, personal or household purposes.

   b. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692(a)(3) because Plaintiff was alleged to owe a "debt" as defined in U.S.C. 1692 §(a)(5).

   c. Defendant Selip is a law firm whose principal purpose is the collection of putative consumer debts. It regularly collects debts allegedly owed by consumers to others, through sending collection letters and other correspondence, filing lawsuits, and using post-judgment remedies, including income executions and bank account restraints.

   d. Selip is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

   e. Defendant David A. Cohen is a partner at Selip and personally engages in the above-mentioned activities carried out by his firm. Like his firm, he regularly collects and

15

attempts to collect debts owed or asserted to be owed to another by all the mechanisms enumerated above. Cohen personally signed the Income Execution that caused Ms. Watkins significant emotional distress.

f. Cohen is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692(a)(6).

g. The actions of Defendants enumerated in the above statement of facts constitute an attempt to collect a debt, or were taken in connection with an attempt to collect a debt, within the meaning of the FDCPA.

66. Defendants materially violated §§ 1692(e) and 1692(f) of the FDCPA. By way of example and not limitation, Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive, or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; falsely representing or implying that a communication is from an attorney; representing or implying that the nonpayment of a debt would result in the seizure, garnishment, attachment, or sale of any property or wages of any person when such action is lawful; threatening to take (and actually taking) an action prohibited by law; the use of any false representation or deceptive means to collect or attempt to collect any debt; using unfair or unconscionable means; collecting or seeking to collect any amount (including any interest, fee, charge, or expense) not owed or not authorized by law; and taking or threatening to take any nonjudicial action to effect dispossession or disablement of property when there is no present right of possession to the property or the property is exempt from such disposition.

67. Defendants' violations of 15 U.S.C. § 1692, *et seq.*, render it liable to Plaintiff.

## SECOND CLAIM FOR RELIEF
**Violations of N.Y. Gen. Bus. Law §349**

68. Plaintiff repeats and realleges each and every allegation contained in the previous

16

paragraphs as though fully set forth herein.

69. New York General Business Law Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state.…"

70. An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. Law § 349(h). An individual so injured may also be awarded treble damages and punitive damages.

71. Defendants violated N.Y. Gen. Bus. Law § 349 by engaging in deceptive acts and practices in the conduct of their businesses that caused specific harm to Ms. Watkins and broadly impact consumers at large.

72. For these reasons and for the other reasons stated in the statement of facts, Defendants' conduct evidences a high degree of moral culpability, or is so flagrant as to transcend mere carelessness, or constitutes willful or wanton negligence or recklessness to justify a punitive damages award. Defendants' wrongful and deceptive acts caused injury and damages to Plaintiff.

73. As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 *et seq.*, Ms. Watkins suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, exemplary, and punitive damages, together with costs and attorneys' fees.

74. As a direct and proximate result of Defendants' violations of N.Y. Gen. Bus. Law § 349, Plaintiff suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, and punitive damages, together with costs and attorneys' fees.

17

**JURY DEMAND**

Plaintiff demands a trial by jury.

**PRAYER**

**WHEREFORE**, Plaintiff Loretta Watkins respectfully requests the following relief:

a. A declaration that Defendants have committed the violations of law alleged in this action;

b. Actual damages;

c. Statutory damages under 15 U.S.C. § 1692k and N.Y. GBL § 349;

d. Punitive damages under N.Y. GBL § 349;

e. Costs, disbursements and attorneys' fees under 15 U.S.C. § 1692k and N.Y. GBL § 349;

f. Prejudgment and post judgment interest as allowed by law;

g. All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Dated: June 24, 2020
Brooklyn, New York

Respectfully submitted,

/s/_____
Pooja Patel, Of Counsel to
Elizabeth Miller, General Counsel
CAMBA Legal Services, Inc.
885 Flatbush Ave., 2nd Floor
Brooklyn, NY 11226
Phone: (718) 940-6311 ext. 79255
Fax: (718) 462-5537
Email: PoojaP@camba.org

/s/_____

Emma Caterine
THE LAW OFFICE OF AHMAD KESHAVARZ
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax: (877) 496-7809
Emma@newyorkconsumerattorney.com


/s/_____
Ahmad Keshavarz
THE LAW OFFICE OF AHMAD KESHAVARZ
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax: (877) 496-7809
Ahmad@newyorkconsumerattorney.com


/s/_____
Matthew Schedler, Of Counsel to
Elizabeth Miller, General Counsel
CAMBA Legal Services, Inc.
885 Flatbush Ave., 2nd Floor
Brooklyn, NY 11226
Phone: (718) 940-6311 ext. 79284
Fax: (718) 462-5537
Email: MatthewSc@camba.org