JARED M. MOGIL
JMOGIL@GRSM.COM
DIRECT DIAL: (212) 269-5500



ATTORNEYS AT LAW
1 BATTERY PARK PLAZA, 28TH FLOOR
NEW YORK, NY 10004
WWW.GRSM.COM

January 23, 2025

**VIA PACER**

Hon. Andrew L. Carter
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

   Re: *Erika Wilson v. Selip & Stylianou, LLP, et al.*
     Case No.: 1:24-cv-4108-ALC
     Letter-Request Pre-Motion Conference

Dear Judge Carter:

  We represent defendant Benjamin Lamb ("Lamb") in the above-referenced action. Pursuant to your Honor's Individual Rule 2(A), Lamb hereby respectfully requests a pre-motion conference for leave to file a motion to dismiss plaintiff's Erika Wilson ("Plaintiff") Complaint as alleged against him as well as the cross-claims asserted by defendant J&E Process Servers ("J&E"), pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

  Plaintiff asserts four claims against Lamb, alleging statutory violations of 15 U.S.C. §§ 1629e and 1692f, commonly referred to as the Fair Debt Collection Practices Act ("FDCPA"), statutory violations of New York State's General Business Law ("GBL") § 349, statutory violations of New York City Administrative Code ("ACC") § 20-409.2, and negligence/gross negligence. [ECF Doc. 3].

  The gravamen of Plaintiff's complaint is that in a certain action commenced in New York City Civil Court titled *Synchrony Bank v. Erika N. Wilson*, Index No. CV-5361-23/BR (the "Underlying Action"), a certain affidavit of service was allegedly falsified to show that Plaintiff was served with the Underlying Action summons and complaint, which Plaintiff alleges did not occur. [ECF Doc. 3, ¶ 62]. Plaintiff alleges that co-defendant Selip & Stylianou, LLP ("S&S"), counsel to Synchrony Bank in the Underlying Action, retained co-defendant J&E Process Servers ("J&E") to serve process on Plaintiff in the Underlying Action. [ECF Doc. 3, ¶ 56]. In turn, J&E delegated the process serving duties to its independent contractor, Lamb – a licensed process server. [ECF Doc. 3, ¶ 56].

Specifically, Plaintiff alleges that Lamb swore to serving "Chante Wilson", a co-tenant of Plaintiff, and mailed the Underlying Action complaint to the same address. [ECF Doc. 3, ¶¶ 57 – 59, 61]. Plaintiff alleges, *inter alia*, that no such person named "Chante Wilson" lives at her apartment and on the date listed in the affidavit, Plaintiff and her only co-tenant (her mother, Shemin Wilson), were at the neonatal intensive care unit at Mount Sinai West Hospital, where Plaintiff's newborn child was receiving care. [ECF Doc. 3, ¶¶ 63 – 65]. Said differently, Plaintiff alleges that Lamb's affidavit was false in its entirety. [ECF Doc. 3, ¶ 62].

Despite her allegations regarding the failure to serve process, Plaintiff appeared in the Underlying Action through counsel and interposed an answer. [ECF Doc. 40]. Thereafter, on December 6, 2023, Plaintiff, through counsel, filed a motion to dismiss the Underlying Action based upon improper service. [ECF Doc. 3, Ex. BB]. Similar to the Complaint, the only support offered was a recitation of Lamb's history of service in *other cases*. [ECF Doc. 3, Ex. BB]. S&S, on behalf of Synchrony, opposed Plaintiff's motion to dismiss. [ECF Doc. 3, Ex. CC]. The Underlying Action court granted the motion to the extent of scheduling a traverse hearing. [ECF Doc. 3, Ex. EE]. The parties stipulated through counsel to discontinue the Underlying Action without prejudice. [ECF Doc. 40].

## I.  Plaintiff Has Not – and Cannot – Plead Concrete Harm and Has No Article III Standing

Plaintiff conclusorily alleges that as a result of not being served in the Underlying Action, she suffered "panic" in not knowing what Sychrony Bank alleged (having only received a notice from the Underlying Action court that a matter had been commenced), suffered unspecific stress, which her newborn baby could sense, had to travel to her lawyer's office with her newborn baby to address the Underlying Action, and incurred various expenses (*e.g.*, parking fees). [ECF Doc. 3, ¶¶ 112 – 115]. However, conspicuously (if not conveniently) absent from the Complaint is any allegation that Synchrony Bank's claims in the Underlying Action were frivolous, or that she suffered any adverse harm, other than the general stress that accompanies a lawsuit and travel expenses.

In light of the Supreme Court's holding in *TransUnion*, Circuit Courts have routinely dismissed claims that allege nothing more than technical violations, especially in the FDCPA context. *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021). Specifically, the Fifth Circuit, citing *TransUnion*, has held that a violation of statutory rights, absent a concrete injury, is not enough to confer Article III standing. *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 823 (5th Cir. 2022). Moreover, the mere risk of financial harm, posed by a statutory violation, cannot support damages if yet unmaterialized. *Id.* This trend has continued in District Courts in this Circuit. *See, In re FDCPA Mailing Vendor Cases*, 551 F.Supp.3d 57 (E.D.N.Y. 2021) (holding that, in light of *TransUnion*, cases involving mailing vendor theories and other technical violations do not constitute concrete injuries to confer Article III standing); *see also, Maddox v. Bank of N.Y. Mellon Trust Co.*, 19 F. 4th 58 (2nd Cir. 2021) (holding on reconsideration that a mere technical violation of New York's mortgage satisfaction recording statutes, wherein plaintiff relied entirely on said statutory violation and future risk of harm, was insufficiently concrete to confer Article III standing in light of *TransUnion*).

As the Supreme Court has succinctly held, "[n]o concrete harm, no standing." *TransUnion*, 594 U.S., at 442. Indeed, "a statutory violation alone … is not sufficient for Article III standing," as an alleged violation of a statute, on its own, does not establish injury in fact. *Harty v. West Point Realty, Inc.,* 28 F. 4th 435, 444 (2d Cir. 2022).

Like the plaintiff in *Maddox* and the plaintiffs in the *Mailing Vendor Cases*, Plaintiff alleged no actual concrete injury. In fact, Plaintiff timely appeared in the Underlying Action and moved for dismissal. The Underlying Action was dismissed without prejudice. By Plaintiff's own recitation, Plaintiff has ensured that any injury was not only speculative but any possible injury has not, and will not, materialize. To the extent that Lamb intentionally falsified an affidavit of service in the Underlying Action, which he did not, such act caused Plaintiff no actual or concrete harm.

Moreover, in opposing S&S's pre-motion letter [ECF Doc. 40], Plaintiff relies upon authority that bears no resemblance to the facts alleged in the Complaint. [ECF Doc. 41]. Specifically, Plaintiff relied upon *Onfroy*, which concerned a landlord suing a tenant *twice* for the same debt. *Onfroy v. Law Offices of Geoffrey T. Mott, P.C.*, 2024 WL 4350489 (E.D.N.Y. September 30, 2024). The *Onfroy* court specifically held that *duplicative* litigation constituted an "unfair or unconscionable means of debt collection" and that having to appear for the second litigation, *i.e.*, incurring expenses and missing work days, was sufficiently concrete. *Id.*, at *3 – 4. However, Plaintiff does not, implicitly or otherwise, dispute the underlying debt to Synchrony Bank nor does she allege that the Underlying Action was frivolous. [ECF Doc. 3]. The costs incurred in filing a motion to dismiss in the Underlying Action was her choice, as she timely interposed an answer and was otherwise unharmed by any defective service of process. Said differently, defending the Underlying Action was an expense that would be incurred regardless of process.

Ultimately, no default judgment was ever entered in the Underlying Action against Plaintiff. Plaintiff has not, because she cannot, allege a concrete harm sufficient to establish Article III standing. Accordingly, Plaintiff lacks Article III standing and the Complaint must be dismissed.

**II.     J&E's Contribution and Indemnification Claims Lack Merit**

J&E asserts cross-claims against S&S and Lamb sounding in common-law indemnification and contribution. [ECF Doc. 28]. However, to state a claim for contribution, the parties must have contributed to the same injury. *Razdolskaya v. Lyubarsky*, 76 N.Y.S.3d 95 (2d Dep't 2018). For all the reasons stated *supra*, Lamb could not have contributed to an injury when Plaintiff failed to allege a concrete injury in the first instance.

Moreover, to support a claim for indemnification, the party seeking such indemnification must establish it was free from negligence. *Jardin v. A Very Special Place, Inc.*, 138 A.D.3d 927 (2d Dep't 2016). To the extent that Plaintiff establishes her negligence claim, which cannot, J&E was the party that contracted with S&S to effectuate service in the Underlying Action. Any act undertaken by Lamb was based upon information provided to him from J&E and, as Plaintiff repeatedly states in her Complaint, J&E approved and ratified any of Lamb's work product. J&E cannot claim it is free from any negligence to support a common law indemnification claim.

3

We thank the Court for its attention to this matter and remain at the Court's convenience.

Yours very truly,

Jared M. Mogil

Cc:   All Counsel of Record (*via* ECF)