# AHMAD KESHAVARZ
### Attorney at Law

| | | |
|---|---|---|
| 16 COURT ST., 26TH FLOOR<br>BROOKLYN, NY 11241-1026 | WWW.NEWYORKCONSUMERATTORNEY.COM<br>E-mail: ahmad@NewYorkConsumerAttorney.com | Telephone: (718) 522-7900<br>Fax: (877) 496-7900 |

February 25, 2025

**VIA ECF**
Honorable Andrew L. Carter, Jr., U.S.D.J.
United States District Court, Southern District of New York
40 Foley Square
New York, NY 10007

**Re: Plaintiff's opposition to Defendant J&E's letter for conference to file motion for judgment on the pleadings [DE 69]**
*Wilson v. Selip & Stylianou, LLP, et al.,* No. 1:24-cv-04108-ALC

Dear Judge Carter:

    The undersigned and co-counsel CAMBA Legal Services represent Plaintiff in this action against Defendants Selip & Stylianou, LLP ("S&S"), their process serving company, J&E Process Servers, Inc, and process server Benjamin Lamb, for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* and New York General Business Law § 349 *et seq.*; for Lamb and J&E's violations of N.Y.C. Admin. Code § 20-409.2; and for S&S's violations of New York Judiciary Law § 487 *et seq.* Defendants S&S and Lamb previously filed letters requesting conferences for proposed motions to dismiss, which Plaintiff opposed, and this Court scheduled a conference for March 13. Defendant J&E has filed a letter requesting a conference for its proposed motion for judgment on the pleadings on the grounds for lack of standing and failure to state a claim. Plaintiff opposes J&E's proposed motion.

    First, J&E contends that Ms. Wilson lacks standing because she has alleged only a statutory violation together with "general stress" and "minimal travel costs," which J&E claims do not constitute a cognizable injury in fact. In the interest of avoiding duplicative submissions to this Court, Ms. Wilson incorporates by reference the arguments in favor of standing that she set forth in her opposition letters to S&S and Lamb. [*See* DE 65, 67.] As discussed in detail in those prior letters, Ms. Wilson has alleged concrete harm in the form of expenses and lost time related specifically to Defendants' execution and filing of a false affidavit of service, and concrete intangible harm because S&S's misconduct in the course of its debt collection litigation bears a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts. Neither of these harms are speculative, and both give rise to standing. *TransUnion, L.L.C. v. Ramirez*, 594 U.S. 413 (2021); *Bohnak v. Marsh & McLennan Companies, Inc.*, 79 F.4th 276, 286 (2d Cir. 2023); *Seaman v. Nat'l Collegiate Student Loan Tr.*, 2023 WL 2975152, at *21 (S.D.N.Y. Mar. 13, 2023), *report and recommendation adopted in part, rejected in part*, 2023 WL 6290622 (S.D.N.Y. Sept. 27, 2023).

    Second, J&E argues "for any of Plaintiff's causes of action against J&E to be viable, Plaintiff must be able to prove that J&E knew or should have known that Lamb's affidavit was false (allegedly)." That is incorrect. The Complaint alleges that Lamb was acting as J&E's agent within the course and scope of his agency. That makes J&E liable for his conduct. Traditionally, principals

1

are liable to third parties for acts committed by their agents within the scope of the agency. *Fils-Aime v. Ryder TRS, Inc.*, 837 N.Y.S.2d 199, 200 (App. Div. 2d Dep't 2007); see also *Meyer v. Holley*, 537 U.S. 280, 285 (2003); *accord Security Pacific Mortg. & Real Estate Servs., Inc. v. Herald Ctr., Ltd.*, 891 F.2d 447, 448 (2d Cir. 1989) (per curiam).  A principal-agent relationship exists when the principal consents to allow the agent to act on his behalf and subject to his control, and where the agent consents to so act. *Meyer*, 37 U.S. at 286; Restatement (Third) of Agency, § 1.01; *Fils-Aime*, 837 N.Y.S.2d at 200. The principal need only have the right to control the agent's conduct; it need not actually control every detail of the agent's conduct. *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1546 (S.D.N.Y. 1991); *Mazart v. State*, 441 N.Y.S.2d 600, 605 (Ct. Claims 1981); 2A N.Y. Jur. 2d Agency § 1.

J&E voluntarily contracted Lamb as its agent to serve process and when Lamb falsified the affidavit of service on Ms. Wilson, he was acting in the scope of his employment or contract with J&E. [DE 3, Compl. ¶¶ 22, 175.]

In addition, Ms. Wilson pleads facts showing that J&E knew or should have known that Lamb's affidavit was false but notarized and filed it anyway, and she also alleges that Lamb was acting as J&E's agent, making J&E liable for his conduct.

Lamb's long history of sewer service and falsifying affidavits of service, including multiple instances of disciplinary action by New York's Department of Consumer and Worker Protection, is a matter of public record. [DE 3, Compl. ¶¶ 37–53.] J&E, as the process serving company contracting service to him, should have been well aware of his past misconduct. Yet it hired him anyway. And when Lamb's license was suspended in May 2023 for failing to pay fines he owed to DCWP for his violations of the rules governing process servers, J&E's parent company paid that fine in order to reinstate Lamb's license and allow him to return to serving process on J&E's behalf. It did so just one month before Lamb alleges he served Ms. Wilson. [DE 3, Compl. ¶ 56 &Exs. H, I, J, K.] This shows both J&E's actual knowledge of Lamb's history of misconduct and its right to control Lamb's process serving activities.

Ms. Wilson also alleges that during the same period in which Lamb lied in his affidavit of service on her, he falsified multiple other affidavits of service on behalf of J&E and Selip. As detailed in the Complaint, one of Ms. Wilson's attorneys, copied 39 affidavits of service from the index numbers surrounding the state court case against Ms. Wilson. [DE 3, Compl. ¶ 71 & Ex. O.] All were executed by Lamb for J&E, in cases brought by Selip as counsel for a creditor, notarized by Melissa A. Cyran, who performs work for J&E, and e-filed by J&E. [*Id.* ¶¶ 71, 60 & Ex. O.] Implausibly, every single affidavit attests to substitute service, and multiple pairs of affidavits contain physically impossible claims to service. [DE 3, Compl. ¶¶ 71–102.] This is apparent from the face of the affidavits, which show visits to different addresses with an impossibly short time in between visits. At least one of these impossible pairs of service attempts purportedly occurred on the same date as the alleged service on Ms. Wilson.  And this pattern is the same *modus operandi* that Lamb has used previously and was uncovered by the *Sykes* litigation over a decade ago. *Sykes v. Mel S. Harris and Associates, LLC,* 285 F.R.D. 279, 284 (S.D.N.Y. 2012).

Taken together, these facts show that Lamb serves as J&E's agent, that he falsified the affidavit of service on Ms. Wilson in the scope of that agency, and that J&E notarizes and files

Lamb's affidavits without review even though: Lamb has a long history of failing to serve process and falsifying affidavits, his affidavits for J&E swear to facts that are impossible on their face, and plainly incompatible affidavits from the same alleged day of service are presented at the same time to the same person at J&E. [DE 3, Compl. ¶ 105.] J&E is liable for Lamb's misconduct and for its own wrongful participation in that misconduct.


Respectfully,

/s/

Ahmad Keshavarz