## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

**ISAAC LEVY,**

                                             **Case No.: _____**

                        **Plaintiff,**

             **-against-**

**PLATINUM FINANCIAL SERVICES CORP. LLC,**
**SELIP & STYLIANOU, LLP f/k/a COHEN & SLAMOWITZ, LLP,**
**CAPITAL PROCESS SERVERS, INC.,**
**GERALD K. MURRAY,**
**PALISADES COLLECTIONS, LLC**
**HOUSLANGER & ASSOCIATES, PLLC, and**
**TODD HOUSLANGER**

-----------------------------------------------------------------X

## ORIGINAL COMPLAINT AND JURY DEMAND

      Plaintiff Isaac Levy brings suit against a debt collection law firm, HOUSLANGER &

ASSOCIATES, PLLC (the "PLLC"), as well as its principal, TODD HOUSLANGER,

(collectively "Houslanger"), another debt collection law firm, SELIP & SYLIANOU, LLP, the

putative judgment creditor PLATINUM FINANCIAL SERVICES CORP. LLC and its putative

assignee, PALISADES COLLECTIONS, LLC for their violations of the Fair Debt Collection

Practices Act, 15 U.S.C. § 1692 *et seq.*, N.Y. Gen. Bus. Law § 349 and for conversion; against

process server company CAPITAL PROCESS SERVERS, INC. and its agent GERALD K.

MURRAY for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. and

N.Y. Gen. Bus. Law § 349; and against the PLLC, Mr. Houslanger, and S&S for their violations

of N.Y. Jud. § 487.

## Summary of Claims[1]

---

1 This summary is not intended to limit the basis of Plaintiff's claims as the full factual basis for the claims are laid
out in far greater detail in the statement of facts.

Plaintiff Isaac Levy brings suits against Defendants for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the FDCPA), New York General Business Law § 349 ("GBL 349), New York Judiciary Law § 489, and/or conversion.

This action involves two set of claims: the first for fraudulently obtaining a default judgment in state court, and the second for impermissible acts in connection with the collection of that judgment.

The first sets of claims are against a debt buyer PLATINUM FINANCIAL SERVICES CORP. LLC ("Platinum"), its debt collection law firm SELIP & STYLIANOU, LLP f/k/a COHEN & SLAMOWITZ, LLP ("SS"), their chosen process serving company, CAPITAL PROCESS SERVERS, INC., and the individual process server GERALD K. MURRAY (collectively "CPS") for fraudulently obtaining a default judgment in a state court collection lawsuit against Mr. Levy by using a false affidavit of service, commonly known as "sewer service." [2] In doing so, Platinum, SS, and CPS violated the FDCPA and GBL 349, and SS violated Judiciary Law 489.

The second sets of claims are against PALISADES COLLECTIONS, LLC ("Palisades"), a putative assignee of the default judgment, its debt collection law firm HOUSLANGER & ASSOCIATES, PLLC (the "PLLC"), and the principal of the firm, TODD HOUSLANGER (Mr. Houslanger" (collectively "Houslanger"), for attempting to collect on a putative assigned judgment without 1) having a notice of assignment of the judgment sent to or received by Mr.

_____

2 "Plaintiffs allege that defendants did so by engaging in "sewer service"—the practice of failing to serve a summons and complaint and then filing a fraudulent affidavit attesting to service. When the debtors failed to appear in court because they did not have notice of the lawsuits, defendants obtained default judgments against them." *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 418 (S.D.N.Y. 2010).

Levy; 2) having an attorney meaningfully involved in the collection of the account to determine whether a notice of assignment had been sent; 3) sending Mr. Levy a notice required by § 1692g of the FDCPA to allow Mr. Levy to dispute the debt and stay collection proceedings until the debt was verified; 4) restraining a bank account based on a judgment obtained by a false affidavit of service; 5) continuing to oppose an Order to Show Cause to despite overwhelming evidence the judgment was obtained by sewer service; and 6) attempting to dupe and then force Mr. Levy to sign a release of claims as a condition of vacating a known sewer service judgment. For these reasons Palisades and Houslanger violated the FDCPA, GBL 349, and committed conversion; and Houslanger violated Judiciary Law 489.

## A.     JURISDICTION AND VENUE

1.     The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA"). Jurisdiction of the Court arises under 28 U.S.C. § 1331 in that this dispute involves predominant issues of federal law under the FDCPA. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202. The Court has supplemental jurisdiction under 28 U.S.C. §1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

2.     Venue in this District is proper because all or a substantial part of the events or omissions giving rise to their claims occurred in Queens County, New York.

## B.     PARTIES

3.     Plaintiff Isaac Levy is an individual residing in Kings County, New York.

3

4.      Defendant PLATINUM FINANCIAL SERVICES CORP. LLC ("Platinum") is a foreign corporation incorporated in the State of Delaware.  Platinum regularly conducts business in the State of New York and this action arises from such conduct.

5.      Defendant Platinum purchases charged-off putative consumer debts and seeks to collect on the putative debts directly and through debt collection law firms such as Defendant Selip & Stylianou. The collection law firms send collection letters, file collection lawsuits, and execute on putative judgments on behalf of Platinum. Platinum does so regularly, and that is its principal purpose. Platinum is therefore a debt collector within the meaning of 15 U.S.C. § 1692a(6).

6.      Defendant SELIP & STYLIANOU, LLP f/k/a COHEN & SLAMOWITZ ("SS") is a New York debt collection law firm that has its principle place of business in Woodbury, New York.

7.      SS regularly collects or attempts to collect, directly or indirectly, debts owed, or due or asserted to be due another by filing thousands of collection lawsuits, collecting on thousands of putative judgments, and sending thousands of collection letters. Selip & Stylianou, is therefore a debt collector within the meaning of 15 U.S.C. § 1692a(6).

8.      SS was an agent of Platinum acting within the course and scope of its agency in seeking to collect the putative debt from Mr. Levy. Therefore, Platinum is jointly and severally liable for the acts taken by SS on Platinum's' behalf. Platinum is also directly liable for its own misconduct as the party in the collection lawsuit.

9.      Defendant CAPITAL PROCESS SERVERS, INC. ("CPS, Inc.") is a process serving agency organized under the laws of the State of New York. CPS, Inc. regularly fails to serve summons and complaints and regularly executes false affidavits of service allowing the entry of

default judgments against putative debtors. CPS Inc. is therefore a debt collector within the meaning of 15 U.S.C. § 1692a(6).

10.    Defendant GERALD MURRAY was the process server working for CPS, Inc. who executed the false affidavit of service contending, *inter alia*, he served the collection lawsuit on "a Jane Doe Cotenant" at an address Mr. Levy had not lived in for four years. Mr. Murray is a notorious sewer service process server whose license was suspended by the New York City Department of Consumer Affairs. Mr. Murray regularly failed to serve summons and complaints and regularly executed false affidavits of service allowing debt collectors, including Houslanger, to enter default judgments against consumers such as Mr. Levy. Mr. Murray is therefore a debt collector as defined by 15 U.S.C. § 1692a(6).

11.    CPS, Inc. and Murray are collectively "CPS."

12.    CPS was an agent of Platinum and SS acting within the course and scope of its agency in seeking to collect the putative debt from Mr. Levy by (falsely) claiming it had served Mr. Levy. Therefore, Platinum and SS is jointly and severally liable for the acts taken by CPS in their behalf.

13.    In the case at bar, Platinum, through SS, filed the collection lawsuit against Mr. Levy alleging it was the assignee of a consumer debt to be owed by Mr. Levy. Platinum and SS used a false affidavit of service executed by CPS to enter a sewer service default judgment against Mr. Levy. Platinum is also directly liable for its own misconduct as the putative judgment creditor assignee.

14.    PALISADES COLLECTIONS, LLC ("Palisades") is a foreign corporation incorporated in the State of Delaware, with a principle place of business of 210 Sylvan Avenue, Eaglewood

Cliffs, New Jersey 07632. Palisades regularly conducts business in the State of New York and this action arises from such conduct.

15.     Defendant Palisades purchases charged-off putative consumer debts and existing judgments, and seeks to collect on the putative debts directly and through debt collection law firms such as Houslanger. The collection law firms send collection letters, file collection lawsuits, and execute on putative judgments on behalf of Palisades. Palisades does so regularly, and that is its principal purpose. Palisades is therefore a debt collector within the meaning of 15 U.S.C. § 1692a(6).

16.     Defendant HOUSLANGER & ASSOCIATES, PLLC ("the PLLC") is a professional corporation organized and existing under the laws of the State of New York, with its principal place of business at 372 New York Ave., Huntington, NY 11743.

17.     Defendant TODD HOUSLANGER is the principal and sole member of the PLLC and, on information and belief, organizes, manages, and controls the operation of the PLLC. Mr. Houslanger, on information and belief, is a resident of the State of New York.

18.     The PLLC and Mr. Houslanger are collectively "Houslanger."

19.     The PLLC and Mr. Houslanger regularly collect or attempt to collect, directly or indirectly, debts owed, or due or asserted to be due another, and that is their principal purpose. The PLLC collects debts by filing thousands of collection lawsuits, collecting on thousands of putative judgments, and sending thousands of collection letters, and that is their principle purpose, and it is what it regularly does. Many, if not most of the summons and complaints filed by the PLLC, as well as the income executions, information subpoenas, and bank restraints go out under the putative signature of Mr. Houslanger. Therefore, the PLLC and Mr. Houslanger are

6

each a debt collector within the meaning of 15 U.S.C. § 1692a(6).

20.     In the case at bar, Palisades alleged it was an assignee of the Platinum judgment, and used Houslanger to collect on the judgment.

21.     Houslanger was an agent of Palisades acting within the course and scope of its agency in seeking to collect the putative debt and resulting judgment from Mr. Levy. Therefore, Palisades is jointly and severally liable for the acts taken by Houslanger on Palisades' behalf. Palisades is also directly liable for its own misconduct as the putative judgment creditor assignee.

22.     Houslanger and Palisades is liable for the misconduct of CPS because they were on notice by way of the Mr. Levey's Supplemental Order to Show Cause of the sewer service of CPS. Despite the overwhelming evidence of sewer service, Palisades and Houslanger attempted to retain the benefits of the misconduct of CPS (the judgment) by opposing the Mr. Levy's motion. Therefore Palisades and Houslanger ratified the misconduct of CPS and are liable by ratification.

## C.   STATEMENT OF FACTS

### FACTS SUPPORTING CLAIMS AGAINST S&S, CPS, AND PLATINUM

#### *Entering default judgment based on a false affidavit of service*

23.     On or about October 24, 2002, Platinum Financial Services Corp. LLC ("Platinum"), through its collection law firm Selip and Stylianou LLP f/k/a Upton, Cohen and Slamowitz ("SS") filed a collections lawsuit in New York County Civil Court against now-Plaintiff Isaac Levy. The suit was captioned *Platinum Financial Services Corp. LLC  vs. Isaac Levy*, Index No.

CV-038127-02/NY ("the Collection Lawsuit"). *See* **Exhibit A** (Collection Lawsuit Complaint).[3]

24. The attorney-verified complaint vaguely alleged "that plaintiff entered into a credit card agreement with plaintiff's predecessor in interest, providian bank;" and that he "defaulted in payment and pursuant to the terms of agreement" and now "owes $1,438.85" with interest from March 28, 2002. *Id.*

25. In fact, Mr. Levy has never opened an account with Providian, Platinum's alleged "predecessor in interest."

26. Platinum and SS chose the process serving company Capital Process Servicers, Inc. ("CPS, Inc.") to execute an affidavit of service. Process server Gerald Murray, working for CPS, Inc. (collectively "CPS") swore before a Notary that on October 11, 2002 he served the summons and complaint on Mr. Levy by delivering and leaving the documents with "a Jane Doe Cotenant" a resident at Mr. Levy's dwelling which he listed as 151 1st Ave #42 New York, NY 10003-2965. Mr. Murray states that the Jane Doe refused to give her name and he described her as a 36-50 year old white female who was approximately 5'4"-5'8" tall and weighed 131-160 lbs. *See* **Exhibit B** (Affidavit of Service).

27. In addition, Mr. Murray further attested that on October 15, 2002, he mailed a copy of the summons and complaint to Mr. Levy at the same address, 151 1st Ave #42 New York, NY 10003-2965. *Id.*

28. At the time of the alleged service, however, Mr. Levy was residing at 505 Johnson Avenue, Unit 4, Brooklyn, NY where he lived from May 2002 to January 2004.

_____

3 All Exhibits attached to this Complaint are incorporated by reference in their entirety.

29. Prior to this address, Mr. Levy lived at 1024 Greene Ave., Brooklyn, NY from May 2000 to May 2002.

30. Mr. Levy has never lived at the address CPS alleged service. Moreover, Mr. Levy has never lived with anyone bearing the description of the "Jane Doe" Mr. Murray described. His roommate was 24 years old and had black hair.

31. Mr. Levy never received a copy of the collection lawsuit from Gerald Murray or any other person.

32. Both CPS, Inc. and Mr. Murray specifically are notorious for systematically executing false affidavits of service.

33. The New York City Department of Consumer Affairs subsequently forced Gerald Murray to surrender his license in 2013 based on misconduct in allegedly serving process, including falsifying affidavits of service. *See* **Exhibit C** (Gerald Murray Consent Order).

34. CPS, Inc. has also been disciplined by the DCA for violations of DCA rules regulating process servers. In February, 2013, CPS, Inc. entered into a consent order with DCA whereby CPS, Inc. paid a $35,000 penalty and was required to adopt policies to protect against sewer service. *See* **Exhibit D** (CPS Consent Order).

35. Platinum and SS used the false affidavit of service to enter a default judgment against Mr. Levy on December 15, 2003 for $1,748.47 plus 9 percent post judgment interest, or approximately $4,100 as of the date of the filing of this FDCPA action. *See* **Exhibit E** (Default Judgment).

**FACTS SUPPORTING CLAIMS AGAINST HOUSLANGER AND PALISADES**

### No Notice of Assignment

36.     Mr. Levy never received, and on information and belief was never sent, a notice of assignment of the judgment on either March 5, 2007 or October 11, 2007 when the judgment was allegedly assigned from Platinum to Palisades Acquisition XV and from Palisades Acquisition XV to Palisades Acquisition XVI or from Palisades Acquisition XVI to Palisades Collection LLC. *See* **Exhibit F** (Palisades' Opposition to OSC exhibits for bill of sale).[4]

37. Upon information and belief, Palisades and Houslanger took no steps to send a notice of assignment or to take any steps to discover whether one had been sent in the past by any of the other entities. Mr. Levy never received a notice of assignment from anyone regarding the judgment or, indeed, regarding the underlying alleged debt.

38. A condition precedent for an assignee of a putative debt (including assignments of judgments) is for a notice of assignment to be sent and received by the putative debtor.

39. Palisades understood the need to send a notice of assignment – it had stipulated for it in the very contract with Platinum Financial Services Corporations by which it acquired Platinum's accounts: *See* **Exhibit G** (Securities and Exchange Commission Filing of Purchase and Sale Agreement), ¶ 6.1 (requirement to "send to a Debtor to confirm that the Sellers [Platinum] sold the Debtor's Account to Buyer [Palisades]."

### The Bank Freeze and Order to Show Cause

40. On May 4, 2018, Mr. Levy and his wife had their first child, a baby girl. His wife and

---

4  The Palisades OSC Opposition attached a putative substitution of attorney notice, dated June 19, 2012, from SS to Houslanger. The notice of substitution was never sent to Mr. Levy, nor does the document allege a copy was sent to Mr. Levy.

child were discharged from the hospital on May 7, 2018, and came home.

41. Mrs. Levy was not working at that time to focus on their newborn daughter, so the family was living off of the sole income of Mr. Levy. Fortunately Mr. and Mrs. Levy had saved in their joint bank account a small nest egg for security for the future of their new family.

42. But then came Houslanger and Palisades.

43. On or about May 3, 2018, Houslanger executed an information subpoena and bank restraint (the "Restraint") and thereafter served it on Bank of America to restrain to Mr. Levy's joint account he had with his wife. *See* **Exhibit H** (Information Subpoena and Bank Restraint).

44. The Restraint was (purportedly) personally signed by Mr. Houslanger. The restraint stated that Platinum had obtained a judgment for $1,688.47 on December 15, 2003 and, with post judgment interest, had a current balance of $3,832.25.[5] The Restraint demanded Bank of America answer the Information Subpoena and impose a restraint of twice the amount of the judgment ($7,664.50), on any bank accounts of Mr. Levy.

45. As a result of the Restraint, Bank of America restrained Mr. Levy's joint bank account with his wife, against whom there was no judgment. The entire or nearly all of the restrained money was exempt from restraint under the N.Y. Exempt Income Protection Act, N.Y. C.P.L.R. 5222, because it consisted of Mr. Levy's wages from the 60 days prior to the restraint.

46. On May 11, 2018, just before the close of business, Mr. Levy first learned of the Restraint. Mr. Levy immediately called the bank to ask why his joint account was frozen. The bank stated that the account was "on hold" due to a legal debt collection notice. The bank could provide no additional information, and advised Mr. Levy to call a phone number 914.666.8100,

---

5 It is unknown why the Restraint stated in the Restraint was slightly less than the actual judgment, $1,688.47 as opposed to $1,748.47, a difference of $60.00.

which was the number for the Houslanger firm.

47. The restraint on Mr. Levy's bank account occurred only a week after his daughter was born. He spent the first months of his newborn child's life worrying that a bank restraint, based on a falsified affidavit of service over a debt he never incurred, could jeopardize his ability to keep a roof over her head.

48. When Mr. Levy called he was told that he had reached Houslanger and Associates but they were closed for the weekend and would not be open until Monday.

49. That weekend, due to the restraint, he and his young family had no access to the money in their joint bank account, even to buy diapers for their new daughter.

50. First thing Monday morning, May 14, 2018, Mr. Levy called the Houslanger office to try to figure out what was going on, and spoke with someone identifying himself as "Jeff." Jeff asked Mr. Levy to confirm if his address was: 1322 Union Ave., Kansas City, Missouri. Mr. Levy explained he had not lived in Kansas City for approximately 20 years.   Jeff stated the account was for a 2003 Providian Visa Account, and asked if Mr. Levy had such account. Mr. Levy indicated he had never had a Providian credit card. Mr. Levy requested all documents related to the debt. Jeff replied that gathering the documents would take a month because the debt was old and they did not have the paperwork. Jeff told Mr. Levy they would have to order the paper work from NY State Courts. Jeff told Mr. Levy it would be much simpler for him to just pay the debt to release his bank account.

51. On or about May 20, 2018, Mr. Levy received correspondence from Bank of America including containing, *inter alia,* the Restraint signed by Houslanger that was served on the bank.

52. When Palisades and Houslanger served the Restraint on Bank of America, they knew and

intended for the bank to forward a copy of the same Mr. Levy as required by state law, which the bank did.

53. The Restraint was the initial communication from both Palisades and Houslanger to Mr. Levy regarding the collection lawsuit and the lawsuit or the judgment.

54. Prior to their issuance of the Restraint, neither Palisades nor Houslanger sent Mr. Levy a letter with the disclosures required by 15 U.S.C. § 1692g of the FDCPA. Prior to the restraint on his bank account, Mr. Levy received from no one – not Palisades, Houslanger, SS, Platinum, Providian Bank, or anyone else – a notice of assignment of the putative debt or the putative judgment. On information and belief, no such notice of assignment was ever sent to Mr. Levy prior to the restraint of his joint bank account.

55. By signing and serving the Restraint, Houslanger implicitly represented to Mr. Levy that that an attorney meaningfully reviewed the facts and circumstances of the file and made a reasoned professional determination that Houslanger had the right to issue the Restraint.

56. However, if Houslanger had performed a meaningful review of Mr. Levy's account they would have determined whether a notice of assignment of the putative debt to Palisades was ever sent; whether the amount claimed to be owed was correct; and whether a 1692g notice letter was sent to Mr. Levy.

57. Houslanger and Palisades both knew that Houslanger was required to perform a meaningful attorney review, and that such a review specifically requires a determination whether a notice of assignment of the putative judgment was sent to the consumer prior to their attempting to collect on an assigned judgment. Houslanger and Palisades both knew of these requirements because that was a holding in a case where both were defendants. *Musah v. Houslanger & Assocs., PLLC*, 962 F. Supp. 2d 636, 641 (SDNY 2013) ("although ordinarily an attorney's

determination that there exists a valid judgment may obviate the need for further review of a case file, in situations such as the instant case, where the judgment was assigned to a third party, §1692e(3) requires that an attorney seeking to collect that judgment engage in a review of the case file sufficient to determine that the judgment debtor received notice of the assignment").In *Musah*, the Court held that the consumer stated a claim against Houslanger by alleging Houslanger did not check to see whether a notice of assignment was sent to the consumer prior to Houslanger collecting on an assigned judgment.

58. On or about May 15, 2018, Mr. Levy went to the New York Civil Court to attempt to obtain the Court file. The staff informed him that the file was in the archives, that Mr. Levy would have to order the file, and that it could be several weeks before the file would be received.

59. Also on May 15, 2018 Mr. Levy, acting *pro se*, filed an Order to Show Cause on May 15, 2018, seeking to remove restraints, vacate the judgment, and discontinue the action. *See* **Exhibit I** (Order to Show Cause).

60. Later that day the Civil Court Judge, finding merit to the application, signed the Order to Show Cause and set a Court date for May 29, 2018. *See* **Exhibit I**.

61. Mr. Levy was given several copies of the documents including one to send to plaintiff's counsel (listed on the court docket sheet as Selip & Stylianou LLP) and one to bring to his bank to request the bank lift the hold on his account.

62. When Mr. Levy brought the Order to Show Cause to Bank of America asking to have the hold released, they refused to lift the hold, telling him they could not do so without approval from Houslanger.

63. Mr. Levy's bank account remained frozen, and he and his wife incurred overdraft fees

from Bank of America.

64. On May 29, 2018, Mr. Levy first appeared in Court and a per diem attorney entered an appearance for Houslanger and Associates. The per diem attorney tried to pressure Mr. Levy to settle in the hallway outside of court before the case had been heard. Mr. Levy would not agree to pay the debt collector for judgment for a suit where he was never served, to collect a debt he never owed. Mr. Levy explained to the judge that the account that was restrained was a joint account with his wife, and that he deposited his wages into the account. The Court granted Plaintiff's application to remove restraints on his Bank of America account. The Court held the judgment in effect and adjourned to August 8, 2018 to allow Mr. Levy time to respond to the OSC Opposition submitted by Houslanger that day.

65. However, Bank of America refused to comply with the May 29, 2018, order removing restraints on his joint account.

66. On or about June 1, 2018, with assistance from the CLARO program,[6] Mr. Levy sent a Discovery demand to Houslanger.

67. On June 11, 2018, Houslanger issued a Subpoena Duces Tecum to Chase Bank, N.A., to obtain "any and all evidence" that Mr. Levy had established an account with Providian Bank. *See* **Exhibit J** (Subpoena to Chase Bank).  Response to the demand was due 7 days later. Providian Bank dissolved approximately 14 years ago, and it is unclear why the subpoena was directed to Chase.

---

6 The Civil Legal Advice and Resource Office (CLARO) provides limited legal advice to low-income New Yorkers being sued by debt collectors. The CLARO Program's volunteer lawyers meet with consumer, help them fill out necessary court forms such as Orders to Show Cause, answers and discovery demands, and provide general advice as to the court process. Unfortunately, CLARO cannot represent the consumers in court.

68. A month later, on July 11, 2018, Mr. Levy received a letter from Houslanger dated July 3, 2018, enclosing two copies of a stipulation discontinuing action and mutual release.

69. Houslanger informed Mr. Levy that their client had decided to drop the case "due to the passage of time beyond the retention period of the original creditor," and "the inability to obtain witnesses and documents to support the underlying claim." *See* **Exhibit K** (Houslanger Letter with Stipulation Vacating).  Apparently Houslanger received no documents in response to the subpoena to support its claim, and had none to provide Mr. Levy in response to his document production demand. Indeed, Defendants never provided documents in response to Mr. Levy's production demand.

70. Houslanger's July 3, 2018 letter affirmatively represented to Mr. Levy – as it would to any consumer, least sophisticated, reasonable, or otherwise – that Houslanger and Palisades, who received the Supplemental OSC and hundreds of pages of exculpatory exhibits, was forthrightly admitting it had no evidence to support its claims and providing Mr. Levy what he had asked for in vacating the judgment and dismissing the case.

71. By use of the cover letter, along with the dense language of the Stipulation Vacating Judgment, Houslanger and Palisades did everything they could to obfuscate the fact that the Stipulation would release any claims Mr. Levy may – and does – have against Houslanger and Palisades, as well as allow them to keep the restrained funds. [7]

---

[7] The full text of the Stipulation Vacating Judgment states, after the caption of the action, the following:

IT IS HEREBY  STIPULATED AND AGREED,  by and between the Attorney for the Plaintiff/Judgment Creditor and the Defendant/Judgment Debtor herein:

1. Due to the passage of time beyond the retention period of the original creditor, and due to the inability  to obtain witnesses  and documents  to establish  the underlying  claim,  the Judgment  entered by the Clerk  of the Civil Court

72. Paragraph 1 of the Stipulation Vacating Judgment certainly comport with the cover letter in that Houslanger and Palisades are vacating the default judgment and releasing any bank restraints or garnishments because they admit they have no evidence to support their claims. The first paragraph, written in fairly straightforward language states the judgment is being vacate "due to the inability to obtain witnesses and documents to establish the underlying claim." Likewise, Paragraph 2 is fairly short, and dismisses the lawsuit without limiting the rights of the consumer.[8]

---

of the City of New York, County of New York on December 15,2003 in the sum of $1,748.47 in the above entitled action is hereby vacated and all bank restraints, income executions and all other judgment enforcement remedies are hereby vacated..

2. The parties further agree that the above entitled action, and any counterclaims, if any, be and the same is hereby discontinued with prejudice, and without costs to either party as against the other. Any Orders to Show Cause or pending Motions are hereby withdrawn with prejudice.

3. Upon execution of this stipulation, the current Judgment Creditor, Palisades Collection, LLC, the assignee of Platinum Financial Services Corp., the assignee of Providian Bank, shall cease all collection and judgment enforcement remedies regarding the Account (ending in 4610), including any and all related fees, charges, interest, or monies, and further agree to release and forever discharge all claims, demands, liabilities, damages or losses against Defendant, his heirs, assigns, co-signors, and/or guarantors, agents, and attorneys, related to the Account, from the beginning of time to the date of execution of this agreement by all parties; and likewise, Defendant, Isaac Levy, upon the execution of this Stipulation, shall release and forever discharge Palisades Collection, LLC, Platinum Financial Services Corp., Providian Bank, Houslanger & Associates, PLLC, its former, present and future parents, subsidiaries and/or affiliates, whether direct or indirect, and any and all former, present and future officers, directors, employees, representatives, predecessors, successors, agents, attorneys, independent contractors or assigns, from any and all claims, demands, liabilities, damages, losses or expenses relating to the account and attempts to collect same, including any and all alleged improper debt collection acts, including claims alleged to be based upon federal FDCPA and/or other New York laws which may govern the collection of debts, from the beginning of time to the date of execution of this agreement by all parties. Any sums previously received, if any, may be retained by the Plaintiff.

4. It is further stipulated that a facsimile copy may be submitted to the Court in lieu of the original and that Plaintiff's counsel shall submit this stipulation to the Court on behalf of both sides.

8 There is a phrase that the consumer dismisses "any counterclaims, if any." However, given the case was closed because of the entry of the default judgment, a consumer would be precluded from filing a counterclaim. Even if the judgment was vacated and the case was restored to the calendar, it is extremely a pro se consumer would file a counterclaim or even know she had a right to do so. Lastly, even in the unlikely even a counterclaim was filed, and the counterclaim dealt with the debt collection practices of the plaintiff in the collection lawsuit, a dismissal of such

73. However, paragraph 3 is an entirely different matter.

74. The first sentence of paragraph 3 goes on for an incredible **_13 lines_** and is some of the most dense, convoluted, legalese imaginable. There are no less than 53 commas in this labyrinthine first sentence, creating 8 lists which are full of obviously obtuse and unnecessary phrases like "its former, present  and future parents,  subsidiaries and/or affiliates,  whether direct or indirect,   and any and all former, present and future officers, directors, employees, representatives,  predecessors,   successors,   agents, attorneys, independent   contractors   or assigns." The purpose of this language is to conceal from any _pro se_ consumer, least sophisticated or otherwise, that the consumer is releasing any rights she may have against Palisades, but also non-parties including Mr. Houslanger.

75. To the degree that the first 6 lines are intelligible to a lay consumer, it states that Houslanger and Palisades cease all collection and judgment enforcement remedies regarding the putative debt. Of course the vacating of the judgment means, by definition, the judgment cannot be enforced, and the discontinuance with prejudice means, by definition, that the putative debt cannot be collected upon.

76. There is no purpose for the first six lines other than to obfuscate lines 7 – 13: it merely restates what is agreed to elsewhere. Lines 7-13, in even more dense language, would release very real claims Mr. Levy has against Houslanger and Palisades that are brought by way of this action.

77. The purpose of the letter and the Stipulation Vacating Judgment is to dupe _pro se_

---

a counterclaim would not affect the rights a consumer would have against Houslanger, who is not a party to the collection lawsuit and thus is not susceptible to being sued in a counterclaim.

consumers into releasing the very rights the FDCPA was designed to protect. Whether Mr. Levy was ultimately duped is immaterial as both GBL 349 and the FDCPA use an objective standard to determine whether a communication is deceptive that does not turn on the subjective understanding of the consumer.9

78. Further a *pro se* consumer may not notice the clause that he has "withdrawn with prejudice" the Order to Show Cause. While Mr. Levy had his funds released in the June 2018 order, other consumers who had their wages garnished or bank account funds seized would unknowingly forfeit those funds.

79. While Mr. Levy was able to see through Houslanger's deceit, the consequences of not signing the stipulation hung over Mr. Levy's head. He understood there was the possibility that the judgment may not be vacated, and that they would be able to garnish thousands of dollars from him for a debt he did not actually owe. This was an enormous pressure on Mr. Levy. He desperately needed that money to pay rent as well as to support his wife and newborn child.

80. On July 16, 2018, with the assistance of CLARO, Mr. Levy filed a supplement to his Order to Show Cause. *See* **Exhibit L** (Supplemental Order to Show Cause).

---

9 The FDCPA was designed for the protection of all consumers, "even the naive and the trusting, against deceptive debt collection practices." Whether a debt collector complies with the FDCPA is determined from the perspective of the "least sophisticated consumer." *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993). The Second Circuit applies an objective test based on the understanding of the "least sophisticated consumer" in determining whether a communication is "false, deceptive or misleading" under 15 U.S.C. 1692e and its subsections. *Id*. "The basic purpose of the least-sophisticated-consumer standard is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Id*. at 1318. The standard "protects the naive and the credulous" *Id*. at 1319. *Jacobson v. Healthcare Fin. Servs.,* 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

81. The Supplemental OSC was accompanied by an extensive record that would leave the

merits of the motion beyond doubt:

- **Exhibit 1:** phone bills from October 2002, November 2002, and January 2004 identifying 505 Johnson Avenue, Apt. 4, Brooklyn, NY 11237 as the address for Mr. Levy.
- **Exhibit 2:** electric bills from January 2004 identifying 505 Johnson Avenue as the address for Mr. Levy.
- **Exhibit 3:** communications from Mr. Levy's landlord from January 2003 and November 2003 both identifying 505 Johnson Avenue as the address for Mr. Levy.
- **Exhibit 4:** 1099-MISC from 2002 identifying 505 Johnson Avenue as the address for Mr. Levy.
- **Exhibit 5:** a lease agreement from July 1, 2000 to June 30, 2001, identifying Mr. Levy as the tenant and 1024 Greene Avenue, Brooklyn, New York 11221 as the apartment.
- **Exhibit 6:** rent payment receipts identifying payer as Mr. Levy and his address as 1024 Greene Avenue.
- **Exhibit 7:** the 100+ record on Gerald Murray from the NYC Department of Consumer Affairs including but not limited the Department's order for Murray to immediately surrender his license.

82. Mr. Levy's proof of sewer service was uncontestable and, as will be seen, uncontested.

No doubt Houslanger would drop the lawsuit and agree to vacate the judgment given this

overwhelming proof.

83. That, of course, was not the case.

84. At the next Court appearance, on August 8, 2018, Houslanger and Palisades continued to

pressure Mr. Levy to sign the Stipulation that included the language releasing claims against

them. Fortunately Mr. Levy was able to get the Court to rule on his application.  Mr. Levy also

informed the Court that Houslanger and Palisades had produced no documents in response to his

May 31, 2018 document demands. The Court granted Plaintiff's application in its entirety,

discontinued the action with prejudice, and ordered any previously restrained funds to be

returned.

## HOUSLANGER AND ITS CLIENTS SYSTEMATICALLY SEEK TO GUT PROTECTIONS UNDER THE FDCPA WITH THEIR PATTERN AND PRACTICE OF ATTEMPTING TO DUPE, AND IF UNSUCCESSFUL TO STRONG-ARM, A MUTUAL RELEASE

### *Gutting FDCPA protections by systematically requiring releases for the debt collector*

85. In recent years, Legal Services attorneys representing low-income consumers have seen Houslanger demand *all* consumers, who are seeking to vacate a default judgment or to discontinue an action, sign these mutual releases that include language that is identical or substantially similar to the language used with Mr. Levy. The mutual release is demanded no matter how strong the evidence is that the judgment was entered by way of a false affidavit of judgment, was for a debt that was not owed or was time barred, or was for the collection of an assigned judgment for which no notice of assignment was sent, among other possible consumer claims or defenses. Houslanger, on behalf of itself and putative judgment creditor clients such as Palisades, is attempting to eviscerate the very protections the FDCPA was enacted to provide. *Pro se* consumers are duped or pressured by Houslanger (and its clients) into signing releases of claims. They hold over the consumers' heads the threats that Houslanger may prevail at the OSC, and that the consumer will then lose the restrained money in their bank accounts, or that, for 20 years from the date of the entry of judgment, that their wages will be garnished and bank accounts restrained in the future.

### BARBARA STINSON: another consumer Houslanger attempted to dupe, and, when unsuccessful, attempted to strong-arm.

86. The Stipulations Vacating Judgment are form documents that debt collection law firms such as Houslanger as well as debt-buyer plaintiffs in collection lawsuits use as a matter of course.

21

87. For example, shortly before filing this action the undersigned filed a separate action in the Southern District of New York against Houslanger for essentially doing to another consumer what it did to Mr. Levy. The action is captioned *Barbara Stinson v. Houslanger & Associates, PLLC, et al.*

88. Putative assignee-creditor DEMI, through its debt collection law firm Houslanger, sued Ms. Stinson for debt she never owed and obtained a default judgment by use of a false affidavit of service. *See* **Exhibit M** (Stinson Collection Lawsuit).

89. Ms. Stinson first learned of the lawsuit filed by DEMI when, thirteen years after the lawsuit was filed, Houslanger attempted to garnish her wages.

90. Ms. Stinson, *pro se*, filed an Order to Show Cause ("OSC") to vacate the default judgment. In the OSC, Ms. Stinson documented with a death certificate that her son who allegedly served was, in fact, dead; and documented with W-2 tax forms, pay stubs, DMV records, and voter registration documents that she had not resided for years at the address where she was allegedly served. *See* **Exhibit N** (Stinson OSC).

91. Further, Defendants DEMI and Houslanger admitted in writing they had no evidence to establish the existence of the putative debt. *See* **Exhibit O** (Stinson Houslanger Letter).

92. In the face of this irrefutable and undisputed evidence supporting the vacature of the default judgment and dismissal of the collection lawsuit, Defendants DEMI and Houslanger attempted to dupe Ms. Stinson into signing a Stipulation Vacating Judgment "so that you may avoid the further inconvenience of coming to Court." *See* **Exhibit O**.

93. Just as with Mr. Levy, the Stipulation buried the same release of potential claims Ms. Stinson may have against the Defendants in the 7th line of a 13-line long sentence made up of

dense legal jargon difficult for any consumer to parse through. *See* **Exhibit O**.

94. When Ms. Stinson refused to release any claims she might have, Defendants DEMI and Houslanger forced her to once again go to court and opposed her order to show cause. Just as with Mr. Levy's bank restraint, Defendants held over Ms. Stinson's head that they could continue to garnish her wages if Ms. Stinson, *pro se*, lost her motion to vacate the default judgment.

95. Ultimately, the state court judge issued a ruling vacating the judgment and dismissing the lawsuit finding that, in fact, Ms. Stinson was never served.

96. By forcing Ms. Stinson to obtain the death certificate of her son, who died when he was only three years old, in order to prove she was never served, Defendants made Ms. Stinson relive the extreme trauma of a mother losing her child.

### *WANDA CEPEDA: a consumer with a sewer service judgment successfully strong-armed by Houslanger to release her potential claims*

97. Houslanger engaged in similar deceptive conduct in the action *Colonial Credit Corporation v. Wanda Then*, CV-030370-05/NA in the District Court of Nassau County.

98. Ms. Cepeda was alleged to have been served by "nail and mail" service on November 9, 2005. However, Ms. Cepeda was never served in this matter, and the allegations regarding service were false. Further, Ms. Cepeda did not owe any debt to the Plaintiff. It allegedly arose from a fitness club which Ms. Cepeda never belonged to. Ms. Cepeda had previously been a victim of identity theft.

99. On or about February 14, 2006 a default judgment was entered against Ms. Cepeda in the amount of One Thousand Three Hundred Seventy-Five Dollars and Thirty-Seven Cents.

100.    As with Mr. Levy, Ms. Cepeda's bank account was frozen by Houslanger on behalf of the debt buyer Palisades, who had allegedly been assigned the debt by Colonial Credit Corporation.

101.    Ms. Cepeda never received either a copy of the judgment or the notice of entry of the judgment. She did not learn about the lawsuit until November of 2017 when after a failed attempt to withdraw funds she realized her bank account was frozen.

102.    Just as with Mr. Levy, the Affidavit of Service was falsified. The process server did not describe any attempt whatsoever to locate a place of employment for Ms. Cepeda. Instead, the affidavit claimed that a neighbor allegedly consulted, "Jane" Powell, did not know Ms. Cepeda's place of employment. Ms. Cepeda did not know of any neighbors at that address with the last name Powell. All attempts at service were made on weekdays; no weekend attempts were made. The address given was not where Ms. Cepeda resided at the time of service and had not lived at that address for nearly two years. She did not even reside in the same state as the address given: she resided in Maryland, not New York, at the time of the alleged service.

103.    The process server had no reason to believe that Ms. Cepeda still resided at the address in the affidavit. Ms. Cepeda had updated her address with the Maryland DMV, the New York DMV, and the post office when she had moved. She then updated her address again when she moved from Maryland to Florida with the Florida DMV and the post office.

104.    In the Supplemental Affidavit, Ms. Cepeda swore that she moved on or around December 2004 from the address allegedly served (1 Holland Avenue, Elmont, NY) to 47 Golden Ave., Deer Park, NY. She then moved to Maryland on or around August 2005, and resided there on the date of alleged service (November 9, 2005). Lastly the name used in the

affidavit of service, "Wanda Then," had not been used by Ms. Cepeda since 2002.

105.    Ms. Cepeda provided the following documents to establish that the address in the affidavit was incorrect:

>    a. Exhibit 1: Maryland DMV record confirming that Ms. Cepeda resided in Maryland at the time of service of process.
>    b. Exhibit 2: New York DMV record confirming that Ms. Cepeda no longer lived at the address at the time service was allegedly made.
>    c. Exhibit 3: Verification that Ms. Cepeda had been the victim of identity theft from the Internal Revenue Service.

106.    The case was an unmistakable instance of sewer service. Houslanger did not file a response to the OSC because they had nothing to rebut the overwhelming documentary evidence Ms. Cepeda presented, and by their own admission they did not have the documents or witnesses necessary to prove this claim.

107.    On February 20, 2018, Ms. Cepeda entered into the same Mutual Stipulation with Houslanger that Ms. Stinson entered into. Ms. Cepeda was pressured into entering into this agreement while she was out of the country and thus dependent on her then-frozen bank account for any money. Just as with Mr. Levy and Ms. Stinson, Houslanger buried deep in the third paragraph, in the 7th line of a 13 line single sentence, a release of any FDCPA or other claims Ms. Cepeda may have against Houslanger and Palisades.

### D.  COUNT 1: FAIR DEBT COLLECTION PRACTICES ACT
### (as to all Defendants)

108.    Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

109.     The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt

collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e); see also *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

110.    Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." *See* S. Rep. No. 382, 95th Con., 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.,* 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

111.    The obligation alleged to be owed by plaintiff is a "debt" as defined by 15 U.S.C. § 1692a(5) because the putative credit card debt was incurred primarily for family, personal or household purposes.

112.    Palisades and Houslanger admit in their verified complaint that the putative debt arose from a "consumer credit transaction."

113.    For the reasons stated in the "Parties" section of this Complaint, each Defendant is a debt collector within the meaning of 15 U.S.C. § 1692a(6).

114.    Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff

was alleged to owe a "debt."

115.     Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e and 1692f.  By way of example and not limitation, Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; threatening to take and actually taking an action prohibited by law; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  Defendants also engaged in unfair or unconscionable litigation in violation of 15 U.S.C. § 1692f by unduly prolonging the legal proceedings in bad faith and requiring Plaintiff to appear at unnecessary hearings. *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 138 (2d Cir. 2017).

116.     Because the bank restraint was the initial communication between the Defendants and Mr. Levy, Houslanger did not provide Mr. Levy the required disclosures under the FDCPA, specifically 15 USC 1692g(a), either in the initial communication or within 5 days of the initial communication.  These disclosures are particularly important here. Had Houslanger provided the required disclosure before executing on the nonexistent judgment, Mr. Levy would have been able to invoke his rights under 15 USC 1692g(b) to have sent a written dispute and demanded that Palisades and Houslanger Defendants cease collections, verify the validity of the vacated judgment, and provide a copy of the judgment.  Had Mr. Levy had the opportunity to invoke his rights in this way, it is possible that a meaningful investigation by the Palisades and S&L,

including searching for and providing a copy of the putative judgment, would have disclosed that the judgment had been vacated before Defendants actually removed funds from Ms. Hunter's accounts.

### E.    COUNT 2: NEW YORK GENERAL BUSINESS LAW SECTION 349 *ET SEQ.*

### (as to all Defendants )

122.    Plaintiff repeats and re-alleges each and every allegation set forth above as if reasserted and re-alleged herein.

123.    New York General Business Law Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state…"

124.    An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h). An individual may also be awarded punitive damages.

125.    As enumerated in the Statement of Facts, Defendants violated N.Y. Gen. Bus. Law § 349 *et seq.* by using deceptive acts and practices in the conduct of their businesses that have broad impact on consumers at large.

126.    Defendants' wrongful and deceptive acts caused injury and damages to Plaintiff.

127.    As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 *et seq*, Plaintiff suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, exemplary, and punitive damages, together with

costs and attorney's fees.

### F.   COUNT 3: CONVERSION (as to Houslanger and Palisades)

128.     Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

129.     The elements of conversion in New York State include: 1) having a possessory interest in property; and 2) having the possessory interest taken or interfered with by another in a manner that is contrary to the possessor's rights.

130.     Property subject to conversion includes, *inter alia*, readily identifiable funds garnished from wages.

131.     Defendants Houslanger and Palisades intentionally and without authority, assumed and exercised control over Plaintiff's wages and money, interfering with his right to possession of the same, by continuing to collect in violation of the order staying collection and, moreover, by willfully refusing to comply with a court order to return the previously garnished funds forthwith.

132.     The improper restraint by Defendants Houslanger and Palisades of Plaintiff's money without qualification, which harmfully interfered with Plaintiff's rights to control his own property, constitutes conversion.

133.     For the reasons stated in the statement of facts, the conduct of Defendants Houslanger and Palisades is gross, wanton or deliberate and demonstrates a high degree of moral culpability. Further, said Defendants conduct as alleged in the statement of facts demonstrates malice, insult, and/or willful or reckless disregard of Plaintiff's rights, or other aggravated acts

by said Defendants. For these reasons, Plaintiff is entitled to punitive damages, in addition to actual damages against Defendants Houslanger and Palisades.

## G.    COUNT 3: NY JUDICIARY LAW § 487 (as to S&S and Houslanger)

134.    New York Judiciary Law § 487 creates a private right of action against an attorney or counselor who "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party;" or "willfully receives any money or allowance for or on account of any money which he has not laid out, or becomes answerable for."

135.    As enumerated in the Statement of Facts, the S&S and Houslanger violated Judiciary Law § 487.

136.    Plaintiff is entitled to actual damages, treble damages, and attorneys' fees and costs for the violations of N.Y. Judiciary Law § 487, and Plaintiff so seeks.

## H.    JURY DEMAND.

137.    Plaintiff demands a trial by jury.

## I.    PRAYER

138.    WHEREFORE, Plaintiff requests the following relief:

a.    A declaration that all Defendants have committed the violations of law alleged in this action;

b.    Statutory damages under 15 U.S.C. § 1692k and GBL 349;

c.    Reasonable attorney's fees and costs;

30

d.      Actual damages;

e.      Treble damages;

f.      Exemplary and punitive damages;

g.      An order, pursuant to GBL 349(h), enjoining and directing Defendants to cease violating that statute;

h.      Prejudgment and post judgment interest as allowed by law;

i. All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

Dated:  Brooklyn, New York
        December 5, 2018

                        Respectfully submitted,

                        /s/

                        Ahmad Keshavarz
                        The Law Office of Ahmad Keshavarz
                        16 Court St., 26th Floor
                        Brooklyn, NY 11241-1026
                        Phone: (718) 522-7900
                        Fax:    (877) 496-7809
                        Email: ahmad@NewYorkConsumerAttorney.com