UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------- X
                                                                     :
ERIKA WILSON,                                                        :
                                                                     :   Case No.: 1:24-cv-4108-ALC
                                        Plaintiff,                   :
                                                                     :
                                                                     :
                      – against –                                   :
                                                                     :
                                                                     :
SELIP & STYLIANOU, LLP; J & E PROCESS                               :
SERVERS; and BENJAMIN LAMB,                                          :
                                                                     :
                                        Defendants.                  :
                                                                     X

--------------------------------------------------------------------


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS**

# Contents

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 3

**I.    STANDING** ...................................................................................................... 5

   **A.    Selip and Stylianou's Motion to Dismiss For Lack of Standing.** ..................... 5

     1.    Ms. Wilson has a Concrete Injury Because She Suffered a Tangible Monetary Loss as a Result of the Defendants' Violations. ................................................................................. 6

     2.    Ms. Wilson's Injury is Traceable to Selip ......................................................... 7

     3.    Ms. Wilson has a Concrete Injury Because There are Multiple Common Law Analogues to the Defendants Violations. ........................................................................................ 10

     4. Abuse of Process and Wrongful use of Civil Proceedings ............................. 11

   **B.    Lamb's Argument for Lack of Standing** ........................................................ 15

   **C.    J&E's Argument for Lack of Standing** .......................................................... 19

**II.    STANDARD FOR A MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)** ................ 20

   **A.    PLAINTIFF ERIKA WILSON HAS STATED FDCPA CLAIMS AGAINST DEFENDANTS SELIP, J&E, AND LAMB** ...................................................... 20

   **B.    PLAINTIFF'S AMENDED COMPLAINT STATES CLAIMS AGAINST DEFENDANTS UNDER THE FDCPA, 15 U.S.C. §§ 1692e AND 1692f** .................................... 21

   **C.    PLAINTIFF HAS STATED A CLAIM UNDER GENERAL BUSINESS LAW § 349 AGAINST ALL THREE DEFENDANTS** ........................................................ 31

   **D.    PLAINTIFF HAS STATED A CLAIM UNDER JUDICIARY LAW § 487 AGAINST DEFENDANT SELIP** ................................................................................ 34

   **E.    PLAINTIFF HAS STATED A CLAIM FOR NEGLIGENCE AGAINST DEFENDANTS** . 37

   **F.    J&E'S GENERAL DENIAL OF LIABILITY FOR ALL CLAIMS IS UNAVAILING** ....... 38

## Cases

*Amalfitano v. Rosenberg*, 12 N.Y.3d 8, 903 N.E.2d 265 (2009) .................................................. 36

*Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128 (2d Cir. 2017) ..... 22, 24, 29, 37

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). ............................................................................. 20

*Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015) ............................................ 7

*Baltazar v. Houslanger & Associates*, 2018 WL 3941943, at *16–17 (E.D.N.Y. 2018) ............. 27

*Baptiste-Elmine v. Richland & Falkowski, PLLC,* 2025 WL 974346 (E.D.N.Y. Apr. 1, 2025)9, 12, 13, 16

*Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1546 (S.D.N.Y. 1991).......... 26

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)......................................................... 20

*Bill Birds, Inc. v. Stein Law Firm, P.C.*, 35 N.Y.3d 173, 178 (N.Y. 2020) ............................ 35, 36

*Bohnak v. Marsh & McLennan Companies, Inc.* 79 F.4th 276, 286 (2nd Cir. 2023)............... 11, 16

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016), *as revised* (Feb. 9, 2016)................ 19

*Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ............................................................................... 19

*Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993) ............................................................. 21

*Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 82 (2d Cir. 2018) ............................... 29

*Crespo v. Gutman, Mintz, Baker & Sonnenfeldt, LLP*, No. 22-CV-6599 (JPO), 2025 WL 871637, at *9 (S.D.N.Y. Mar. 20, 2025) ............................................................................................ 38

*Department of Commerce v. New York*, 588 U.S. 752 (2019)........................................................ 9

*Diaz v. Portfolio Recovery Assocs., LLC*, No. 10 CV 3920 ERK, 2012 WL 661456, at *7-8 (E.D.N.Y. Feb. 28, 2012) ("*Diaz R&R*"), *report and recommendation adopted,* No. 10 CV 3920 MKB CLP, 2012 WL 1882976 (E.D.N.Y. May 24, 2012)............................................. 36

*Elliott v. City of New York*, 747 N.E.2d at 734–737 ..................................................................... 38

*Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010), cert. denied, 130 S. Ct. 3333 (2010).......................................................................................................................................... 21

*Feinstein v. Bergner*, 48. N.Y. 2d 234 (1979) ............................................................................... 1

*Fils-Aime v. Ryder TRS Inc.*, 837 N.Y.S.2d at 200...................................................................... 26

*Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89 (2d Cir. 2012)........................... 29

*Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462–63 (7th Cir. 2020) ...................................... 11

*Guzman v. Mel S. Harris & Assocs.  LLC*, 2018 WL 1665252, at *8 (S.D.N.Y. Mar. 22, 2018) 22, 24, 32, 34

*Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 412 (E.D.N.Y. 2012), *aff'd*, 529 F. App'x 45 (2d Cir. 2013)............................................................................................................ 37

*Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.,* 37 N.Y.3d 169, 171 N.E.3d 1192 (2021) ...................................................................................... 31

*Hunter v. Palisades Acquisition XVI, LLC*, No. 16 CIV. 8779 (ER), 2017 WL 5513636, at *8 (S.D.N.Y. Nov. 16, 2017)................................................................................................... 30, 32

*In re FDCPA Mailing Vendor Cases* 551 F.Supp.3d 57 (E.D.N.Y. 2021)............................. 15, 17

*In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013). 19

*Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008) ........................................... 21

*Karlin v. IVF America, Inc.*, 93 N.Y.2d 282, 290 (1999) ................................................ 38

*Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013) .......................................... 7

*Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002) ...................................... 20, 29

*Leyse v. Lifetime Ent. Servs., LLC*, 679 F. App'x 44, 46 (2d Cir. 2017) ...................................... 19

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 at 560 (1992) ...................................................... 7

*M.G. v. N.Y. State Off. of Mental Health*, 572 F. Supp. 3d 1, 12 (S.D.N.Y. 2021) .................. 7, 19

*Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021) ................... 6, 15, 17

*Makhnevich v. Bougopoulos*, No. 18-CV-285 (KAM) (VMS), 2022 WL 939409, at *5 n.7
    (E.D.N.Y. Mar. 29, 2022) ............................................................................. 13

*Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685 at 700 (S.D.N.Y. 2015) ............................... 34

*Mazart v. State*, 441 N.Y.S.2d 600, 605 (Ct. Claims 1981) ........................................... 26

*Merced v. Resurgent Cap. Servs., L.P.*, No. 22-CV 08327 (ALC), 2024 WL 1076519 (S.D.N.Y.
    2024) ............................................................................................................. 16

*Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2,* 419 F. Supp. 3d 668, 701 (S.D.N.Y. 2019) 27

*Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1303 (11th Cir. 2015) .............................. 28

*Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 304 (2d Cir. 2003) ................................ 27

*Mullane v. Central Hanover Bank and Trust Co.*, 70 S. Ct. 652 (1950) ....................................... 1

*Musah v. Houslanger & Assocs., PLLC*, 962 F.Supp.2d 636, 640–41 (S.D.N.Y. 2013) .............. 27

*Onfroy v. Law Offices of Geoffrey T. Mott P.C.*, 751 F.Supp.3d. 195 (E.D.N.Y. Sept 30. 2024) . 13,
    14, 15, 16

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25–26
    (1995) ........................................................................................................... 33

*Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816 (5th Cir. 2022) .................. 15, 16

*Polanco v. NCO Portfolio Mgmt., Inc.*, 132 F. Supp. 3d 567 (S.D.N.Y. 2015) .......................... 25

*Remler v. Cona Elder Law, PLLC*, 21-CV-5176(ARR)(LB), 2022 WL 4586243, at *7 (E.D.N.Y.
    Sept. 29, 2022) ............................................................................................ 35

*Rosa v. Mandarich L. Grp., LLP*, No. 22-CV-4720 (LJL), 2024 WL 871209 at *9 (S.D.N.Y. Feb.
    29, 2024) ................................................................................................. 28, 29

*Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013) ...................................................... 7

*Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996) ............................................... 21

*Saba Capital CEF Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*, 88 F.4th 103 (2d
    Cir. 2023) ................................................................................................ 10, 11

*Sanchez v. Ehrlich*, No. 16-CV-8677 (LAP), 2018 WL 2084147, at *6–7 (S.D.N.Y. Mar. 29,
    2018) ........................................................................................................... 37

*Scarola v. Verizon Communications, Inc.*, 146 A.D.3d 692 (1st Dep't 2017) ........................ 33, 34

*Scott v. Greenberg*, No. 15-CV-05527 (MKB), 2017 WL 1214441 (E.D.N.Y. Mar. 31, 2017) ... 24,
    37

*Scutti Enters., LLC v. Park Place Ent. Corp.*, 322 F.3d 211, 214 (2d Cir. 2003) ...................... 20

*Seaman v. Nat'l Collegiate Student Loan Tr.*, 2023 WL 6290622 (S.D.N.Y. Sept. 27, 2023) 13, 14,
    15

*Somerset v. Stephen Einstein & Assocs., P.C.*, 351 F. Supp. 3d 201 (E.D.N.Y. 2019)........... 27, 34

*Spokeo Inc. v. Robins*, 578 U.S. 330 (2016) ........................................................................ 10, 11

*St. Pierre v. Dyer*, 208 F.3d 394 at 402 (2015) ........................................................................ 7

*Stutman v. Chem. Bank*, 95 N.Y.2d 24, 31 (2000) ................................................................ 33

*Sykes v. Mel Harris & Assocs.*, LLC, 285 F.R.D. 279 (S.D.N.Y. 2012) ................................... 3, 5

*Sykes v. Mel Harris & Assocs., LLC*, 757 F.Supp.2d 413 (S.D.N.Y. 2010)................. 3, 25, 29, 37

*Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015)............................................. 3

*Synchrony Bank v. Erika N. Wilson*, Index No. CV-05361-23/BX ............................................. 3

*Texidor v. Tromberg, Morris, and Poulin, PLLC,* 2023 WL 8043067 (E.D.N.Y. 2023).............. 34

*Toohey v. Portfolio Recovery Assocs., LLC*, 2016 WL 4473016, at *10 n.17 (S.D.N.Y. Aug. 22, 2016) .......................................................................................................................... 13

*TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)............................................... 6, 10, 11, 15

*Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021) ...................................................................... 6

*Vangorden v. Second Round Ltd. P'ship*, 897 F.3d 433, 437 (2d Cir. 2018) .............................. 22

*Varela v. Investors Ins. Holding Corp.*, 81 N.Y.2d 958, 960 (1993)....................................... 32, 33

*Vasquez v. Mullooly, Jeffrey, Rooney & Flynn LLP*, No. 16 Civ. 6609 (VSB), 2017 WL 4402567, at *3 (S.D.N.Y. Sept. 30, 2017) ................................................................................... 22

*Viernes v. DNF Assocs., LLC*, 582 F. Supp. 3d 738 (D. Haw. 2022) .................................... 14, 15

*Villalba v. Houslanger & Assocs., PLLC*, No. 19-CV-4270-PKC-RLM, 2022 WL 900538, at *19 (E.D.N.Y. Mar. 28, 2022)............................................................................................... passim

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche, LLP*, 549 F.3d 100, 106 (2d Cir. 2008) ... 6

*Winslow v. Forster & Garbus, LLP*, 2017 WL 6375744, at *13 (E.D.N.Y. Dec. 13, 2017)......... 34

## Statutes

15 U.S.C. § 1692............................................................................................. 20, 24, 26, 27

15 U.S.C. § 1692c ................................................................................................................ 28

N.Y. Admin Code §§ 20-403–20-410 ................................................................................... 38

N.Y. GBL § 89-ee.................................................................................................................. 39

N.Y.C. Admin. Code § 20-406.2(b) ...................................................................................... 39

RCNY § 2-234 ...................................................................................................................... 39

Restatement (Second) of Torts § 682 ............................................................................... 11, 12

Restatement (Third) of Agency, § 1.01 .................................................................................. 26

Restatement of Torts § 674 .................................................................................................. 12

## PRELIMINARY STATEMENT

New York's rules of service are rooted in the right to due process and exist to ensure that people know about the lawsuits against them. *Feinstein v. Bergner*, 48. N.Y. 2d 234 (1979); *Mullane v. Central Hanover Bank and Trust Co.*, 70 S. Ct. 652 (1950). Over the last 20 years, however, defendants in consumer credit collection actions have been systemically denied the right to be heard because of purposefully improper service. The practice is so widespread it has been given its own term, "sewer service," likening it to the act of process servers throwing papers into the sewer rather than delivering them to defendants. The reason purposeful improper service is so widespread is because it allows debt collectors to obtain default judgments, which are extremely valuable. On default, a debt collector can get a judgment for any amount they chose to demand in a complaint. And once they have a default judgment, a debt collector can garnish wages, freeze a bank account, or put a lien against property. Debt collection law firms can use these enforcement tools to coerce defendants to pay debts they do not owe, or pay more than they believe they owe, all without having to prove their case in court.

Ms. Wilson is the victim of one such scheme. Benjamin Lamb, a process server with a long history of improper service, falsely claimed that he served a relative of hers, "Chante," that does not exist. Lamb was hired by J&E, a process serving agency, who reviews and notarizes his false affidavits and files them with the court. J&E is hired by Selip, who also reviews Lamb's false affidavits so it can know when default will occur and plan the next steps in the case. Selip benefits from the improper service by obtaining default judgments for their clients.

At the time Lamb claimed he served the nonexistent "Chante," Ms. Wilson was in the hospital, worrying about her newborn who had to spend her first days in the neonatal intensive care unit. Ms. Wilson never received the summons and complaint and discovered the case only when she received a bare-bones notice of lawsuit from the court, which did not enclose the

complaint or explain what the case was about. Unlike the vast majority of consumer defendants, Ms. Wilson was able to find a nonprofit lawyer who agreed to assist her. In preparing the motion to dismiss, Ms. Wilson's attorneys reviewed 39 affidavits of service sworn to by Lamb, all in cases brought by Selip as the law firm, using J&E as the process serving agency. These affidavits bore all the hallmarks of Lamb's past instances of bad service: substitute service in every affidavit and claims of service at times and locations that are impossible.

Faced with an obvious case of sewer service, Selip pressed on, refusing to discontinue unless Ms. Wilson agreed to waive her claims against all parties relating to the improper service. When Ms. Wilson balked, Selip made the offer again, this time trying to sweeten the pot by limiting the release just to Selip and their client and telling Ms. Wilson's attorney that they would "take a look at any cases you have wherein the process server in Benjamin Lamb."  Selip knew Lamb's service was bad, but they wanted to leverage continuing the litigation to protect themselves and the other players in their scheme. In the face of Ms. Wilson's evidence, the civil court set the case down for an evidentiary hearing at which Lamb would have to take the stand and have to answer for the affidavits under oath. On the eve of the hearing, Selip finally agreed to discontinue the case without waivers or releases.

Defendants challenge Ms. Wilson's standing to bring her claims, arguing that she was not injured and if she was, they were not the cause of it. But Defendants' scheme has caused Ms. Wilson both tangible and intangible injury. She has a tangible monetary injury because the violations cause her to spend time and money to travel to CAMBA to prepare affidavits in support of her motion to dismiss. She also suffered intangible injury because the harms she experienced-- lost time, being denied notice of the lawsuit against her through purposeful improper service, and being in default in the lawsuit—have a close relationship to harms that are a basis for redress under

common law unjustified litigation torts.

Defendants also challenge whether Ms. Wilson has stated a cause of action for her claims. But here, Ms. Wilson treads a well-worn path, as courts have repeatedly agreed that sewer service schemes like the one at issue here violate the FDCPA, GBL 349, and Judiciary Law 487. *See, e.g. Sykes v. Mel Harris & Assocs., LLC*, 757 F.Supp.2d 413 (S.D.N.Y. 2010) (order denying motion to dismiss) ("Sykes I"), *Sykes v. Mel Harris & Assocs.*, LLC, 285 F.R.D. 279 (S.D.N.Y. 2012) (order granting class certification) ("Sykes II"), and *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70 (2d Cir. 2015) (order affirming class certification) ("Sykes III"). Defendants' motions to dismiss must therefore be denied.

## STATEMENT OF FACTS

Ms. Wilson brings the present action against Defendants Selip & Stylianou, LLC (Selip), J&E Process Servers, Inc. (J&E), and Benjamin Lamb (Lamb) for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. and New York General Business Law § 349 et seq.; for Lamb and J&E's violations of N.Y.C. Admin Code § 20-409.2; and for Selip's violations of New York Judiciary Law § 487 et seq.; and for common law claims for negligence and gross negligence. These violations stem from a debt collection suit commenced in Bronx County Civil Court by Selip on behalf of Synchrony Bank on May 30, 2023, titled *Synchrony Bank v. Erika N. Wilson*, Index No. CV-05361-23/BX (Collection Suit). FAC ¶ 2. To obtain an affidavit of service in the Collection Suit, Selip hired J&E, which in turn contracted Lamb, a notorious practitioner of sewer service. *Id*.

On June 21, 2023, J&E filed an affidavit of service executed by Lamb and fraudulently claiming to have served Ms. Wilson on June 8, 2023, via "substitute service" on a "Chante Wilson" he claimed was her "co-resident." *Id*., ¶¶ 63-66. No such person exists. *Id*., ¶ 70. Ms. Wilson's only co-resident was her mother. *Id*., ¶ 69. On June 8, 2023, Ms. Wilson and her mother were both in

the Neonatal Intensive Care Unit of Mount Sinai West, watching over her two-day-old daughter. *Id.*, ¶ 71. Ms. Wilson was never served with the summons and complaint in the debt collection suit, neither via a "co-resident" nor by mail. *Id.*, ¶ 68. Every statement in Lamb's affidavit of service was false. *Id.*

Lamb's claim of effecting "substitute service" in this case aligned with his incredible pattern and practice of alleging substitute service in over 98% of the cases J&E contracted him for in 2023. *Id.*, ¶ 120. This affidavit of service was one of hundreds that Lamb executed in 2023 as an agent of both Selip and J&E—many of these are plainly impossible attempts at service. *Id.*, ¶¶ 111-131. Indeed, J&E and Selip both had access to Lamb's records which showed he also claimed to serve a second person at a different address via substitute service just five minutes after he claimed to serve "Chante Wilson" *Id.*, ¶ 148. Ms. Wilson did not learn about the Collection Suit until she received a bare-bones notice from the court informing her that she had been sued, warning her that she could lose her property if she did not appear in time, but not providing her with a date to respond by. *Id.*, ¶¶ 5-6.

While caring for her newborn, Ms. Wilson was forced to urgently seek out legal counsel to help her review the casefile, traveling from the Bronx to the offices of CAMBA Legal Services in Flatbush, Brooklyn. Ms. Wilson filed a Motion to Dismiss for lack of personal jurisdiction, signing a sworn affidavit explaining that the affidavit of service was false. *Id.*, ¶¶ 139-140. Selip opposed this motion, and refused to discontinue the case, even after receiving an additional Reply to their opposition from Ms. Wilson, and even though they possessed a portion of Lamb's logbook showing that his claim of service on Ms. Wilson was impossible. *Id.*, ¶¶ 142-148. Selip twice attempted to leverage discontinuance of the Collection Suit to secure a waiver of claims, first as to Selip, Synchrony Bank – the plaintiff in the Collection Suit – and all their agents, and later just as

to Selip and Synchrony. *Id.*, ¶¶ 143-150.

As a result of Defendants' conduct, Ms. Wilson suffered actual damages. She paid for the subway to travel from the Bronx to meet with CAMBA Legal Services in Flatbush, Brooklyn, and for gas and metered parking when she returned to CAMBA's offices to prepare and sign an affidavit for her Motion to Dismiss. FAC at ¶¶ 138-140. Ms. Wilson, a new mother, also suffered significant emotional distress damages because her first knowledge of the lawsuit came from a bare-bones notice that she had been sued and could lose her wages and property, causing her stress, anxiety, panic, and lost sleep. FAC at ¶¶ 133-137.

### *Lamb's History of Improper Service*

Lamb's bad conduct is nothing new. He was a named defendant in *Sykes v. Mel S. Harris*, a class action in which Lamb and other process servers engaged in a scheme to perform purposeful improper service in order to generate default judgments. In granting class certification, Judge Denny Chin highlighted Lamb's claims of service at more than one location at the exact same time and his claims of service that were "made so close in time that it would have been impossible for the process server to travel from one location to the other as claimed" as substantial support for the claim that Lamb engaged in sewer service. *Sykes*, 285 F.R.D. 279, 284. Lamb's improper service was also apparent from the type of service alleged: in virtually every instance—91.2 percent of affidavits reviewed—Lamb claimed to have performed substitute service. This egregious pattern is virtually identical to the service described in Lamb's logbook in this action. FAC Ex. NN.

### I.     STANDING

### A.  Selip and Stylianou's Motion to Dismiss For Lack of Standing.

Plaintiffs establish standing by demonstrating three elements: 1) injury in fact that is "concrete, particularized, and actual or imminent," 2) that the injury "was likely caused by the

defendant," and 3) redressability. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021); *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F.4th 58, 62 (2d Cir. 2021). Because standing is challenged on the basis of the pleadings, courts must accept as true all material allegations of the complaint and construe them in the plaintiff's favor. *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche, LLP*, 549 F.3d 100, 106 (2d Cir. 2008). Defendants challenge only the first two elements of Ms. Wilson's standing, injury in fact and causation.

An injury can be concrete in two separate ways. First, it can be tangible, like a monetary injury or a physical injury. *TransUnion v. Ramirez,* 594 U.S. 413, 425. Second, a plaintiff can have an intangible injury if the harm suffered "has a 'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id* at 417. Ms. Wilson suffered both types of injuries, traceable to the Defendants' conduct.

1. *Ms. Wilson has a Concrete Injury Because She Suffered a Tangible Monetary Loss as a Result of the Defendants' Violations.*

Ms. Wilson expended time and money to travel to and from CAMBA's offices two times. FAC ¶¶ 10, 11, 138, 140. The first trip was for an intake and a determination to represent her in the collection action. *Id*. at ¶ 138. The sole reason for her second trip was to review and execute an affidavit in support of her motion to dismiss. *Id*. ¶¶ 11, 140. Selip does not dispute that Ms. Wilson's lost time and expenses for these trips are a concrete, tangible injury sufficient to confer standing under Article III. Dkt. No. pp. 11, 12. Instead, Selip argues that the lost time and expenses are not traceable to Selip because she would have incurred these costs even if Selip had not violated the law. *Id*. That is not true. She lost time and incurred expenses associated with filing a motion to dismiss as a direct result of Selip's improper service and filing of the false affidavit of service. Absent that improper service, she would not have had to make the motion to dismiss or incur the

travel costs. The question of whether Ms. Wilson would have been able to get free legal services if she were properly served has no relation to the injury she suffered.  Cases where even the cost of a few dollars incurred by wrongful debt collection litigation, e.g. *Onfroy* and *Seaman*, are below, *supra* p. 9, because in those cases standing was found under both a (nominal) monetary harm and a common law analogue.

2.    *Ms. Wilson's Injury is Traceable to Selip*

Selip next argues, without analysis, that Ms. Wilson's tangible injury is not traceable to them because any harm is the fault of Lamb. Selip does not cite any cases related to traceability or discuss what the standard is to evaluate whether there is a causal connection between a defendant and an injury. But the traceability standard is a low bar. To satisfy it, a plaintiff must plead "a causal connection between the injury and the defendant['s] conduct." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013). While the injury must be "fairly traceable" to a defendant's actions and "not the result of the independent action of some third party not before the court," *Lujan v. Defs. of Wildlife,* 504 U.S. 555 at 560 (1992), the "fairly traceable" standard is "relatively modest," requiring something "lower than proximate cause," *Rothstein v. UBS AG*, 708 F.3d 82, 92 (2d Cir. 2013). Plaintiffs do not need to quantify how much of the harm is attributable to a specific defendant, let alone show that it is wholly attributable to that defendant, as long as they sufficiently show some reasonable connection between the defendants' conduct and their harm. *M.G. v. N.Y. State Off. of Mental Health*, 572 F. Supp. 3d 1, 12 (S.D.N.Y. 2021). "So long as the defendants have engaged in conduct that may have contributed to causing the injury, it would be better to recognize standing." *Backer ex rel. Freedman v. Shah*, 788 F.3d 341, 344 (2d Cir. 2015) (quoting *St. Pierre v. Dyer*, 208 F.3d 394 at 402 (2015)).

Selip seeks to cast the harm as the result of a single actor, Lamb, and portray themselves as an innocent satellite caught in his orbit, but this ignores the allegations in the complaint and the

breadth of the misconduct. Ms. Wilson does not merely allege that she was not served, she alleges Selip knew that J&E regularly hired Lamb, and they knew that Lamb engaged in sewer service. FAC ¶ 2, 57. Selip knew this not only because of Lamb's history, but because of the affidavits of service they were receiving from J&E and Lamb's claims of substitute service in 98% of cases. *Id* at ¶ 120. This would have made it immediately clear to anyone glancing at the affidavits that they were false and that service as described was not possible.

When Selip commences cases, they purchase index numbers in batches of consecutive numbers. They then send these out to a process serving agency, who in turn assign a process server. This is how Ms. Wilson was able to review the 39 Lamb affidavits: her attorneys looked at affidavits for the Selip cases surrounding her index number. This also means that when Selip gets the affidavits, they get a stack of Lamb affidavits at once. Selip will need to review these affidavits so it can know when an answer is due, when a default would occur, and to set its calendar for the beginning of the case. Lamb's name on an affidavit by itself is a red flag, but anyone reviewing his affidavits, as Selip would have had to at the beginning of the case, would know from their face that so many instances of substitute service were impossible. Selip ratified Lamb's misconduct by pressing forward with these cases when service was so obviously improper. Selip did this because they and their clients benefit from the improper service by being able to obtain easy default judgments.

Selip is not a victim of Lamb's wrongdoing, but the cause of it. They use Lamb and J&E because they know service is unlikely to occur and that they can more easily obtain lucrative default judgments. They are the beneficiaries of Lamb and J&E's misconduct and, as Ms. Wilson alleges, set it in motion. Ms. Wilson's harms are traceable to Selip because they engaged in conduct that contributed to causing the injury: they chose a process serving agency that they knew used

Lamb for service, had J&E file Lamb's affidavit, and continued using Lamb after receiving and reviewing affidavits which made clear he was engaging in sewer service, allowing the harms of Lamb's improper service to be realized in the form of improper default judgments. Even when confronted with the bad acts by Ms. Wilson, Selip fought to keep the scheme alive by securing waiver of claims against the parties in exchange for a discontinuance.

A similar traceability fact pattern was recently analyzed in *Baptiste-Elmine v. Richland & Falkowski. Baptiste-Elmine v. Richland & Falkowski, PLLC,* 2025 WL 974346, at *13 (E.D.N.Y. Apr. 1, 2025). In that case, homeowners who were defendants in foreclosure actions sued a debt collection law firm and a mortgage servicer because a portion, though not all, of the amounts sought in the complaints were time barred. The court held that the homeowners' damages - the out-of-pocket cost of having to meet with their attorneys to determine which amounts could be legally collected and to include a statute of limitations defense in their answer to the complaint - were "fairly traceable" to conduct of the law firm.[1] *Id* at 8. These damages, the court agreed, were the "predictable effect" of the defendants' conduct. *Id.* at 8 (quoting *Department of Commerce v. New York*, 588 U.S. 752, 768 (2019)). Importantly, the court in *Baptiste-Elmine* found causation even though the goal of the defendant's scheme, the collection of time-barred monies, was not realized. The same is true here. Selip engaged in a scheme to improperly serve Ms. Wilson. A predictable effect was that she expended time and money to assert a personal jurisdiction defense, even though Selip's desired harm, the entry of a default judgment and collection of money pursuant to it, was not realized. Ms. Wilson's harm is substantively identical to the harm of the homeowners in *Baptiste-Elmine* and the predictable result of Selip's improper service scheme, satisfying the traceability requirement and giving her standing.

---

[1] The mortgage servicer defendant in *Baptiste-Elmine v. Richland & Falkowski* did not challenge traceability. *Baptiste-Elmine v. Richland & Falkowski,* 21-cv-4994 ECF 70-1.

3.      *Ms. Wilson has a Concrete Injury Because There are Multiple Common Law Analogues to the Defendants Violations.*

Selip goes on to argue that Ms. Wilson lacks an intangible concrete injury because she does not satisfy the *prima facie* requirements for malicious prosecution or abuse of process in New York, which Selip claims are the common law claims analogous to the conduct here.

Congress may elevate de facto injuries that were previously inadequate in law to legally cognizable concrete injuries. *TransUnion*, 594 U.S. at 432 (citing *Spokeo*, 578 U.S. at 341). To determine whether an intangible harm is an injury in fact for standing purposes, courts look to whether it has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts. *Spokeo Inc. v. Robins*, 578 U.S. 330 at 340-41 (2016). So here, the question is not whether there is a common law basis to sue, the FDCPA – and state law – have created one, the question is whether there is a close historical or common law analogue for Ms. Wilson's intangible injury. *Saba Capital CEF Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*, 88 F.4[th] 103 (2d Cir. 2023). In evaluating whether there is standing for an intangible injury "Courts must afford due respect to Congress's decision to impose a statutory prohibition or obligation on a defendant, and to grant a plaintiff a cause of action to sue over the defendant's violation of that statutory prohibition or obligation." *TransUnion*, 594 U.S. at 425 (*citing Spokeo*, 578 U. S. at 340–41).

To make its argument, Selip sets out the elements for malicious prosecution and abuse of process in New York and argues that Ms. Wilson does not satisfy them. According to Selip, Ms. Wilson cannot have a malicious prosecution claim because in New York malicious prosecution cannot be based on improper service, and she cannot have abuse of process claim because an abuse of process claim cannot be based on the entry of a default judgment or the service of a summons and complaint. By evaluating whether Ms. Wilson satisfied New York's common law elements for

claims she did not even assert, Selip is engaging in an analytical approach explicitly rejected by the Second Circuit. It does not matter whether a plaintiff states a common law cause of action or even if New York recognizes a common law claim for the alleged misconduct. *Bohnak v. Marsh & McLennan Companies, Inc*. 79 F.4th 276, 286 (2nd Cir. 2023). What matters is that the intangible harm arising from the misconduct bears a relationship to an injury that has a close historical or common law analogue. It does not need to be an exact duplicate. *Id.* (citing *TransUnion* at 432).

Courts are to look to whether there is a relationship in kind, not degree, and while the common law offers guidance it does not stake out the limits of Congress's power to identify harms deserving of a remedy. *Gadelhak v. AT&T Servs., Inc.*, 950 F.3d 458, 462–63 (7th Cir. 2020) (Barrett, J.) In *Gadelhak*, for example, the harm posed by a few unwanted text messages was analogous to the harm protected by common law claims for intrusion upon seclusion, even if it was more "minor" than the level of harm that was actionable at common law. *Id*. The analysis did not require matching Illinois state common law elements for intrusion upon seclusion to Gadelhak's fact pattern; it looked at the harm suffered and then relied on the Restatement of Torts to determine if the historical harm was of the same kind suffered by Gadelhak. *Id*. A reliance on the Restatements rather than state common law elements to determine the harm is the approach in *TransUnion*, in *Spokeo*, and in the Second Circuit. *TransUnion*, 594 U.S. at 432, 434; *Spokeo*, 578 U.S. at 431; *Bohnak v. Marsh & McLennan Companies, Inc*. 79 F.4th at 285; *Saba Capital CEF Opportunities 1, Ltd. v. Nuveen Floating Rate Income Fund*, 88 F.4th at 116.

*4. Abuse of Process and Wrongful use of Civil Proceedings*

Under the Second Restatement of Torts, an abuse of process claim exists against "one who uses a legal process, whether criminal or civil, against another primarily to accomplish a purpose for which it is not designed…" Restatement (Second) of Torts § 682. For a claim of abuse of

process, liability is imposed for the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. *Id.* at comment a. It is immaterial that the process was properly issued, that it was obtained in the course of proceedings that were brought with probable cause and for a proper purpose, or even that the proceedings terminated in favor of the person instituting or initiating them. *Id.* As the Restatement makes clear, the historical requirements for an abuse of process claim have none of the limitations cited by Selip and squarely encompass the improper service scheme at issue here. The defendants used a legal process - service of a summons and complaint - for a purpose it is not designed – to generate an easy default judgment – as opposed to its intended purpose to give a defendant notice of the case against her. The paradigmatic harm abuse of process seeks to prevent is the use of process to put pressure on another to compel them to pay a debt. *Id.* at comment b. This is the same harm Congress chose to elevate in enacting the FDCPA and gives Ms. Wilson standing for her intangible injuries.

The same is true of the common law claim for wrongful use of civil proceedings. A claim for wrongful use of civil proceedings arises when a party initiates or continues a civil proceeding without probable cause and primarily for a purpose other than securing a proper adjudication of their claim. Restatement of Torts § 674.  Like abuse of process claims, claims for wrongful use of civil proceedings seek to prevent parties from misusing litigation to gain an unfair advantage, again, the same harms targeted by Congress in the FDCPA.

Multiple courts have found that the harms from improper debt collection schemes that violate the FDCPA are analogous to these common law causes of action, and create standing. For example, in *Baptiste-Elmine v. Richland & Falkowski,* the court found that out of pocket expenses and lost time associated with having to defend against misleading claims and the *threat* of a default judgment of foreclosure based in part on time-barred debt were concrete intangible harms because

there is a common law analogue to fraudulent misrepresentation and abuse of process. *Baptiste-Elmine v. Richland & Falkowski* at 7. (*emphasis added*). In *Seaman v. Nat'l Collegiate Student Loan Tr.*, the court held that the harms associated with the false, deceptive, or misleading representations made by debt collectors to state courts with the power to enter judgments have the ability to cause consumers severe harm, including "being subjected to a lawsuit that should never have been brought; suffering the entry of an adverse default judgment in such a lawsuit, followed in many cases by wage garnishment; and, for those consumers who fought back, incurring significant costs, both in time and money, to vacate improperly-obtained judgments." *Id.* at 20 (citing *Toohey v. Portfolio Recovery Assocs., LLC*, 2016 WL 4473016, at *10 n.17 (S.D.N.Y. Aug. 22, 2016)). The court held that these were all "distinct and palpable" injuries in fact and analogous to the unjustifiable litigation torts and found that plaintiffs who were victims of a multi-part sham lawsuit scheme had standing. *Seaman v. Nat'l Collegiate Student Loan Tr.*, 2023 WL 6290622 (S.D.N.Y. Sept. 27, 2023).

And directly analogous to this case, in *Makhnevich v. Bougopoulos*, the court found that allegations of sewer service were analogous to the unjustified litigation torts and the plaintiff had standing. *Makhnevich v. Bougopoulos*, No. 18-CV-285 (KAM) (VMS), 2022 WL 939409, at *5 n.7 (E.D.N.Y. Mar. 29, 2022). That is all to say, "[a]busive debt collection is similar to the harms of malicious prosecution, wrongful use of civil proceedings, and abuse of process" and will serve as a common law analogue sufficient for standing under Article III. *Onfroy v. Law Offices of Geoffrey T. Mott P.C.*, 751 F.Supp.3d. 195 at 203 (E.D.N.Y. Sept 30. 2024) (finding a common law analogue between being sued twice for the same debt and the common law claims of malicious prosecution, wrongful use of civil proceedings, and abuse of process).

In response to this line of cases, Selip first argues that the underlying debt collection claim

is meritorious and that Ms. Wilson does not dispute the debt. Selip's claim that the underlying case has merit is unfounded: the action was not adjudicated on the merits, and their claim that Ms. Wilson does not dispute the debt is not true because she specifically disputed the debt in paragraphs 12 and 13 of her answer in the collection action. FAC Exhibit BB ¶¶ 12,13 ECF 74-28. Even if this was true, it is irrelevant: as the Restatement makes clear, abusive litigation conduct to collect a debt is improper whether that debt is owed or not. *Viernes v. DNF Assocs., LLC*, 582 F. Supp. 3d 738, 752-53 (D. Haw. 2022) speaks directly to this point. There, plaintiff was sued for a debt they admitted owing, but alleged the lawsuit was improper because the creditor was not properly licensed. The court held that being subjected to a lawsuit by an unlicensed collector was unlawful collection analogous to the common law unjustified litigation torts, giving standing. The court made clear that the inquiry was not whether Viernes met the elements for these common law claims, but "merely analogizing to traditional common-law rights, not actually deciding such rights." *Id.* at 750. The same is true here: Ms. Wilson experienced harm analogous to the unjustified litigations torts and has standing under Article III.

Selip goes on to argue that *Onfroy* and *Seaman* do not support Ms. Wilson's claim, because in *Onfroy* the impropriety was that the second lawsuit lacked substantive merit, while in *Seaman* the plaintiffs had default judgments entered against them which they had to vacate. According to Selip, because Ms. Wilson later received notice of the case and had the case dismissed, Selip did not derive an advantage from the misconduct. But the question is not whether Selip's scheme was successful, it is whether Ms. Wilson was harmed. She had to spend time and money traveling to her attorney and reviewing and executing an affidavit in support of a motion to dismiss, she lost time, and she was in default in her civil case. Ms. Wilson has standing for these intangible harms because they are born from a scheme to improperly serve defendants that violates the FDCPA and

that is analogous to common unjustified litigation torts. *Viernes*, 582 F. Supp. 3d at 752-53 ("being subjected to an unlawful lawsuit is a concrete harm"). Selip is offering a version of standing that not only requires harm, but maximum harm desired by the bad conduct. This has no basis in the caselaw, and would force plaintiffs to suffer unnecessary harm in order to have standing. Moreover, Selip's argument would deny standing to the plaintiff in *Onfroy* and many of the class members in *Seaman* who did not experience any collection related to the misconduct. The question under *TransUnion* is only whether there is tangible or intangible harm; under *TransUnion*, Ms. Wilson has standing.

### B.  Lamb's Argument for Lack of Standing

Lamb also moves to dismiss Ms. Wilson's claims for lack of standing, but makes different arguments from the Selip defendants. In doing so Lamb does not differentiate between tangible or intangible injury, discuss common law analogues, or otherwise engage in the analysis set out under *TransUnion*. Instead, Lamb chiefly argues that Ms. Wilson suffered a mere "technical violation"—a term he does not define—that does not give rise to standing. But as the Supreme Court has made clear, the standing inquiry looks at the injury caused to the plaintiff by the defendant, not the degree of the defendant's conduct.

Lamb cites only three cases in support of his argument, *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, 45 F.4th 816 (5th Cir. 2022); *In re FDCPA Mailing Vendor Cases* 551 F.Supp.3d 57 (E.D.N.Y. 2021) and *Maddox v. Bank of New York Mellon Trust Co*. None of these cases contain the term "technical violation" and Lamb does not explain what he thinks that means. Lamb's view that proper service of process is a mere technical nicety, however, likely informs his conduct and why he was comfortable engaging in clear improper service for years. In any case, none of the cases cited by Lamb support his position that the court should find Ms. Wilson does not have

standing.

In *Perez v. McCreary, Veselka, Bragg & Allen, P.C.*, the plaintiff received a collection letter for a time barred debt that did not inform the consumer of that fact. *Perez* at 820. The Fifth Circuit determined that the plaintiff did not have standing because she did not suffer a tangible harm or an intangible harm with a common law analogue. *Id.* at 824. Perez alleged one tangible harm - that she was at risk for paying a time barred debt – but the court held that this was a future harm and did not confer standing. *Id.* The *Perez* court highlighted that Perez did not allege that she suffered a monetary injury, suggesting if she had the standing analysis would be different. In this way, the opinion supports Ms. Wilson's claim, as she did have a monetary out of pocket loss associated with the misconduct. This is an important distinction, as claims of expenditure centered around concern or confusion for a future injury will not confer standing. *Merced v. Resurgent Cap. Servs., L.P.*, No. 22-CV 08327 (ALC), 2024 WL 1076519, at *3–*4 (S.D.N.Y. 2024). Here, Ms. Wilson's harm was bound up in the injury: she was intentionally not served and she had to pay money to vindicate her rights.

Perez's intangible harms, like confusion and getting an unwanted letter, also did not confer standing because they were not close enough to the common law analogues of fraudulent misrepresentation or intrusion on seclusion. Standing was denied for the lost time harm because of a failure of the plaintiff's lawyer to raise the argument, not because the theory actually lacked merit. *Id.* at 825. The court left open the question of whether lost time could confer standing with the appropriate common law claim. And since this decision, the Second Circuit has made clear that lost time is an intangible injury that can give rise to standing. *Bohnak*. 79 F.4th at 286 (lost time to mitigate harm from data breach); *Baptiste-Elmine* at *6 at (lost time is a concrete injury analogous to the unjustified litigation torts); *Onfroy*, 751 F.Supp.3d. at 203 (lost time is a concrete

injury for analogous abuse of process and malicious prosecution claims.)

The other two cases cited by Lamb have even less bearing on the question of standing presented here. In *In re FDCPA Mailing Vendor Cases*, plaintiffs sued debt collectors for using third party vendors to send collection letters in violation of the FDCPA. *In re FDCPA Mailing Vendor Cases* 551 F.Supp.3d at 63. In addition to the far different conduct at issue, the plaintiffs in the mailing vendor cases did not allege tangible injury and the court determined that the harms they claimed did not bear a close relationship to the harms addressed by the possible common law analogues, like defamation and invasion of privacy. Ms. Wilson does allege tangible injury, and has shown that her injuries are very close to harms traditionally addressed by common law and the Constitution. The same is true of *Maddox*, a case brought under New York State's mortgage lender recording statutes, which requires holders to record a loan discharge within 30 days. The plaintiffs paid their mortgage, but the bank waited over a year to file, in violation of the law and entitling plaintiffs to cash penalties. The plaintiffs did not allege that they suffered tangible harm, only the future risk of harm. The court ruled that that was not sufficient to confer standing, and that the common law analogue to defamation was not close enough. Like the mailing vendor cases, this decision does not inform whether Ms. Wilson has standing, because it does not involve a tangible injury or the common law analogues at issue here.

Like Selip, Lamb goes on to argue that because Defendants' scheme was not successful and Ms. Wilson got her case dismissed, she was not harmed. As discussed above, just because the fraudulent scheme did not meet its ultimate goal does not mean that there was no harm. It is often the case that an FDCPA plaintiff will discover the illegal conduct before that conduct causes maximum harm, but that does not mean there is no standing, so long as the plaintiff did suffer some harm. This is highlighted by the standing decisions discussed above, in which the defendants

were not able to achieve the goal of the illegal conduct but the plaintiffs still had Article III standing. For example, in *Baptiste-Elmine*, the defendants were not able to collect the unlawful amounts sought, and in *Onfroy*, the defendants did not collect money pursuant to their improper default judgment. *Baptiste-Elmine; Onfroy.*. The same is true here; just because Ms. Wilson did not have a default entered and collected on does not mean she was not harmed or does not have standing. Because of Lamb's improper service Ms. Wilson suffered tangible monetary injury to rectify it and suffered intangible injury analogous to the common law claims. *Baptiste-Elmine; Onfroy; Durden v. DNF Assocs. LLC*, 2023 WL 2482638, at *2 (E.D.N.Y. Jan. 10, 2023) (injury in fact established through, *inter alia*, costs to hire a lawyer to defend against defendant's debt collection lawsuit).

Lamb makes two final arguments: first, that there is no causation between his improper service and plaintiff's damages, and second, that because Ms. Wilson might have incurred other costs if Lamb did not violate the law, the harm she did suffer is cancelled out. Both arguments are offered without the support of any caselaw. As to causation, there is a direct line between Lamb's conduct and the harm: he is the one who purposely failed to effect service and falsified the affidavit of service. Ms. Wilson's damages are a direct result of that misconduct. The suggestion that Ms. Wilson may have had other costs if she were served has no decisional basis and – if it were the rule – would force courts to engage in an impossible series of hypotheticals filled with unknowns in order to perform a standing analysis. Courts can only look at the facts in front of them. In this case, Ms. Wilson experienced illegal conduct; she had to spend money to address it; and she had a series of intangible harms analogous to common law claims under the unjustified litigation torts. As a result, she has standing. What might have happened in a different timeline under other facts is not part of the analysis.

### C. J&E's Argument for Lack of Standing

As with Lamb, J&E beats the "technical violation" drum, arguing that service of process is a mere technicality. As with Lamb, this flippancy likely explains why J&E willingly accepted the stacks of fraudulent Lamb affidavits that they were notarizing and filing, virtually all of which claimed substitute service. Also identical to Lamb, J&E relies on *Maddox* and the mailing vendor cases to support its technical violation argument. These cases are detailed above, and they fail to inform standing for J&E in the same way they do for Lamb. The same is true for J&E's causation argument, also virtually identical to Lamb's and wrong for the same reasons.

Unique to J&E's motion is the claim the Ms. Wilson's monetary harms are *de minimis*. This line of argument has been explicitly rejected by both the Supreme Court and the Second Circuit, which have made clear "[t]he injury-in-fact necessary for standing need not be large; an identifiable trifle will suffice." *Leyse v. Lifetime Ent. Servs., LLC*, 679 F. App'x 44, 46 (2d Cir. 2017) (quoting *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 105 (2d Cir. 2013)); *cf. Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016), *as revised* (Feb. 9, 2016) ("As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.") (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)).

Lastly, J&E argues that the injury is not traceable to them, but this argument fails for the same reason as Selip's traceability argument. J&E does not support their argument with any caselaw or meaningful discussion of the traceability requirements. As discussed above, traceability is a low bar; all that is necessary is some reasonable connection between defendants' conduct and their harm. *M.G. v. N.Y. State Off. of Mental Health*, 572 F. Supp. 3d 1, 12 (S.D.N.Y. 2021). Here, J&E is a vital conduit in the scheme: they are the ones who hire Lamb – even though they know his history of improper service - and they help facilitate the scheme. As highlighted above, virtually

19

all of Lamb's affidavits allege substitute service. Lamb presents these affidavits in batches to a J&E employee, Melissa Cyran, who notarizes them one after the other on the same date, putting her and J&E on notice of their contents. Of the 39 affidavits reviewed for Ms. Wilson's motion to dismiss, for example, ten were notarized by Melissa Cyran on June 16, 2023, nineteen were notarized by her on June 23, 2026, nine were notarized on June 26, 2026, and the last one in the batch was notarized on July 7, 2023. In all of these affidavits, Lamb swore to substitute service. J&E is necessary to the scheme in every way: they hire Lamb, they notarize his false affidavits, and they file them with the court. The scheme could not exist without them.  As a result, any injury from the scheme is traceable to J&E.

## II.    STANDARD FOR A MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is facially plausible when the court can reasonably infer from the facts pled that the defendant is liable for the alleged conduct. *Id*. The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of misconduct. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In deciding a motion to dismiss for failure to state a claim, a court must accept as true all facts alleged in the complaint and draw all inferences in the plaintiff's favor. *Scutti Enters., LLC v. Park Place Ent. Corp*., 322 F.3d 211, 214 (2d Cir. 2003).

## A.    PLAINTIFF ERIKA WILSON HAS STATED FDCPA CLAIMS AGAINST DEFENDANTS SELIP, J&E, AND LAMB

Congress enacted the FDCPA "to protect consumers from deceptive or harassing actions taken by debt collectors" *Kropelnicki v. Siegel*, 290 F.3d 118, 127 (2d Cir. 2002); *see also* 15 U.S.C. § 1692(a), by authorizing private parties to bring suit as "private attorneys general," S. Rep. No.

382, 95th Con., 1st Sess. 5 ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance."); *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008).

The FDCPA is a strict liability statute, and a consumer does not need to show intentional conduct on the part of the debt collector. *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010), cert. denied, 130 S. Ct. 3333 (2010); *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996). ("As the Supreme Court has held in the general context of consumer protection – of which the Fair Debt Collection Practices Act is a part – it does not seem unfair to require that one who deliberately goes perilously close to an area of proscribed conduct shall take the risk that he may cross the line.") (citations omitted). Nor is the extent of the conduct relevant: "a single violation of the FDCPA is sufficient to impose liability." *Ellis*, 591 F.3d at 133. Whether a debt collector's deceptive conduct violates the FDCPA is determined with respect to the "least sophisticated consumer" standard. *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir.1993). This is an "objective standard, designed to protect all consumers." *Ellis*, 591 F.3d at 135.

## B. PLAINTIFF'S AMENDED COMPLAINT STATES CLAIMS AGAINST DEFENDANTS UNDER THE FDCPA, 15 U.S.C. §§ 1692e AND 1692f

Ms. Wilson brings FDCPA claims against Defendants for creating and filing a false affidavit of service in a debt collection suit, and unfairly leveraging this "bogus legal document" to prolong the suit. The FDCPA was enacted to eliminate exactly these kinds of abusive and deceptive practices. *See* S. Rep. No. 95–382(807).

To state a claim under the FDCPA, a plaintiff must sufficiently allege three elements: 1) she is a consumer under the statute's definition, 2) the defendant is a debt collector under the statute's definition, and 3) the defendant "committed some act or omission in violation of the FDCPA." *Vasquez v. Mullooly, Jeffrey, Rooney & Flynn LLP*, No. 16 Civ. 6609 (VSB), 2017 WL

4402567, at *3 (S.D.N.Y. Sept. 30, 2017); 591 F.3d at 133-34. Selip & J&E move to dismiss Wilson's complaint for failure to state an FDCPA claim. They do not dispute the first two elements, but contend they did not violate the FDCPA. Lamb does not move to dismiss Ms. Wilson's FDCPA claim.

Ms. Wilson brings her claims under two overlapping sections of the FDCPA, 15 U.S.C.A. §§ 1692e, 1692f, which both list expressly prohibited conduct while also enabling "the courts where appropriate, to proscribe other improper conduct which is not specifically addressed." *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128 (2d Cir. 2017) (quoting S. Rep. No. 95–382, 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696). § 1692f prohibits using "unfair or unconscionable means" to collect a debt, and "is aimed at practices that give the debt collector an unfair advantage over the debtor or are inherently abusive." *Id.* at 136. § 1692e bars "any false, deceptive, or misleading representation or means in connection with the collection of any debt," targeting "practices that take advantage of a debtor's naivete or lack of legal acumen." *Vangorden v. Second Round Ltd. P'ship*, 897 F.3d 433, 437 (2d Cir. 2018).

Whether a practice is deceptive or unfair under 1692e and 1692 is analyzed from "the perspective of the 'least sophisticated consumer,'" defined as someone who is lacking "the sophistication of the average consumer and may be naive about the law, but is rational and possesses a rudimentary amount of information about the world." *Arias*, at 135 (quoting *Ellis*, 591 F.3d 135). Debt collectors violate both §§ 1692e and 1692f when they engage in sewer service and "unduly prolong[] legal proceedings or require[] a consumer to appear at an unnecessary hearing." *Arias*, at 138; *see also Villalba v. Houslanger & Assocs., PLLC*, No. 19-CV-4270-PKC-RLM, 2022 WL 900538, at *19 (E.D.N.Y. Mar. 28, 2022); *Guzman v. Mel S. Harris & Assocs. LLC*, 2018 WL 1665252, at *8 (S.D.N.Y. Mar. 22, 2018).

As the attorneys bringing the debt collection suit against Ms. Wilson, Selip enlisted the services of J&E and their subcontractor Lamb. Selip knew Lamb would likely never serve Ms. Wilson, but would deliver an affidavit of service and clear the way for a default judgment. FAC ¶ 2. In turn, Lamb, according to his regular practice, did not serve Ms. Wilson, but provided J&E and Selip with a false affidavit claiming to serve the fictional "Chante Wilson" at Ms. Wilson's home at a time when nobody was at home. FAC at ¶¶ 66-71. J&E was on notice that this affidavit of service was likely false because on the same day that Lamb submitted this affidavit to J&E, he also submitted multiple affidavits reflecting physically impossible attempts at service by substitute service. FAC at ¶¶ 3, 76-78. In fact, Lamb's logbook showed that he claimed to serve a different person in a different location at least a four-minute drive away a mere five minutes after supposedly serving "Chante Wilson." FAC at ¶ 148. Despite knowing Lamb was a notorious practitioner of sewer service with a disciplinary history, J&E ignored these red flags and notarized then filed these highly suspect affidavits of service. FAC at ¶¶ 62-63. The J&E employee who notarized the affidavit also notarized numerous implausible and impossible affidavits for Lamb in the months surrounding this filing. FAC at ¶¶ 64-65, 78.

Selip then doubled down by opposing Ms. Wilson's motion to dismiss in the debt collection action, ratifying Lamb's false statements in the affidavit of service and prolonging the litigation. Selip then ignored Ms. Wilson's Reply to their own baseless opposition, and sat on their own records which included a portion of Lamb's logbook, showing that he preposterously claimed to effect service at a second address a mere five minutes after serving the fictional "Chante Wilson." On the date of oral argument on the Motion to Dismiss, Selip attempted to leverage discontinuance on the condition that Ms. Wilson agree to release all claims against Selip, Synchrony Bank, and their agents. *Id.*, ¶ 143. After Ms. Wilson rejected the release of claims clause, Selip again

attempted to coerce her into releasing claims against only Selip and Synchrony, and Ms. Wilson again refused. *Id.*, ¶ 150. Finally, the court granted the motion to dismiss and scheduled an evidentiary hearing where Lamb would have to appear and testify about his false affidavit. Only when faced with that prospect did Selip finally agree to discontinue.

In short, Defendants obtained and relied on a false affidavit of service in their dogged attempts at debt collection in violation of §§ 1692e and 1692f. This behavior was deceptive and "shockingly unjust or unfair, or affronting the sense of justice, decency, or reasonableness." *Arias*, at 135; *see also Scott v. Greenberg,* No. 15-CV-05527 (MKB), 2017 WL 1214441 (E.D.N.Y. Mar. 31, 2017) (holding that plaintiff stated a claim under §§ 1692e and 1692f where defendant had filed a false affidavit of service); *Guzman,* 2018 WL 1665252, at *8.[2]

Selip's conduct is analogous to that of the defendant law firm in *Arias*, which refused to return exempt funds to a consumer until the date of a hearing, when they examined the exact same bank statements that the consumer had already sent to them twice before the hearing. *Arias* at 138. Selip's conduct was also similar to that of the defendant in *Villalba,* 2022 WL 900538 at *19, in which a law firm refused to vacate an invalid sewer service judgment or return funds garnished pursuant to that judgment, prolonging the litigation for months. Only on the date of the traverse hearing did the firm agree to vacate—on the conditions that they keep the garnished funds and the consumer sign a mutual release of claims. Following *Arias*, the court agreed this was unfair and deceptive: "Knowingly prolonging a baseless litigation against a consumer, and, once the scheme is revealed, offering to settle that suit only if the consumer provides something in return, is 'unfair

---

[2] Selip notes that Ms. Wilson's Amended Complaint does not address whether she owed the underlying debt in this action, but this question is immaterial to whether the defendants violated the FDCPA. *See* Selip Mem. of L. at 1. "Liability under the FDCPA can be established irrespective of whether the presumed debtor owes the debt in question." *See Sykes*, 285 F.R.D. 279, 292.

or unconscionable litigation conduct…").

Attempting to sidestep the abusive and deceptive nature of their scheme to obtain default judgments against consumers like Ms. Wilson, Selip tries to recast its violations as technicalities. Selip argues that Ms. Wilson has not stated an FDCPA claim based on four grounds: 1) it was Lamb and J&E, not Selip, who signed and filed the false affidavit of service, 2) the FDCPA does not require an attorney to meaningfully review an affidavit of service before filing, 3) the FDPCA does not apply when an attorney serves as an intermediary between a debt collector and a consumer, and 4) that S&S did not act in bad faith by opposing the motion to dismiss.

First, Selip argues that it is not liable under the FDCPA because the fraudulent affidavit of service at issue here was filed by defendant J&E and signed by defendant Lamb. Selip Mem. at 11. Selip had the ultimate responsibility to serve Ms. Wilson and file the affidavit of service with the court. J&E and Lamb both acted at the direction of Selip. Obtaining and filing an affidavit of service is not simply a ministerial task—it establishes personal jurisdiction and allows a lawyer to proceed with litigation and to obtain a default judgment if no answer is filed. Selip purposefully contracted J&E to execute and file an affidavit of service in this case, knowing that J&E regularly hired Lamb, a notorious practitioner of sewer service, to "serve" process in thousands of Selip cases. Selip cannot disclaim its responsibility for its intentional conduct and for such a core piece of its responsibilities as an officer of the court.

A debt collection law firm may be held vicariously liable for its process server's practice of sewer service if it "knew the affidavits of service are highly likely to be false." *Sykes,* 757 F. Supp. 2d 413, n. 9. More generally, debt collectors may be held vicariously liable for their agents' actions that violate the FDCPA. *Polanco v. NCO Portfolio Mgmt., Inc.,* 132 F. Supp. 3d 567 (S.D.N.Y. 2015). A principal-agent relationship exists when the principal consents to allow the

agent to act on his behalf and subject to his control, and where the agent consents to so act. *Meyer*, 37 U.S. at 286; Restatement (Third) of Agency, § 1.01; *Fils-Aime v. Ryder TRS Inc.*, 837 N.Y.S.2d at 200. The principal need only have the right to control the agent's conduct; it need not actually control every detail of the agent's conduct. *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1546 (S.D.N.Y. 1991); *Mazart v. State*, 441 N.Y.S.2d 600, 605 (Ct. Claims 1981); 2A N.Y. Jur. 2d Agency § 1.[3]

Selip claims it is "significant" that the DCWP "was aware of Lamb's record and chose not to revoke his license." Selip Mem. at 11. But Selip and J&E possessed knowledge about Lamb's lies that DCWP did not possess. Both received and filed his false affidavits of service in batches, possessed the portion of Lamb's logbook that showed the improbability of his claim of service on Ms. Wilson, and filed multiple affidavits of service signed by Lamb that showed physically impossible attempts at service in 2023. FAC at ¶¶ 111-117, 148.

Second, Selip argues that it had no obligation to conduct meaningful attorney review of the affidavit of service, because 1692e(3) only requires "meaningful review" of an account before an attorney represents "that he is an attorney or that his communications are from an attorney." Selip Mem. at 11).

This view flies in the face of Selip's obligations as an officer of the court and ignores that Ms. Wilson's claim extends beyond failing to review the affidavit of service before it was filed. Ms. Wilson has alleged that Selip purposefully engaged a known practitioner of sewer service, willfully ignored evidence that the affidavit of service was false, and allowed it to be filed on

---

[3] Selip claims that Ms. Wilson concedes that "Lamb was never hired or instructed to fake service" because of a sentence in the Amended Complaint that states: "J&E regularly contracted Lamb to effect service" Selip Mem. Of L. at 11 (*quoting* FAC ¶ 2). Ms. Wilson makes no such concession, and the use of the common turn of phrase "effect service" should not be read to negate the Amended Complaint's repeated assertions that Selip engaged J&E, which in turn contracted Lamb, in order to obtain executed affidavits of service, while knowing the likelihood that service was never accomplished. *See, e.g.*, FAC ¶¶ 2, 61.

Selip's behalf so that Selip could attempt to obtain an invalid judgment against Ms. Wilson.

Selip's conduct violates § 1692e in general, as well as e(3) specifically. The FDCPA broadly defines "communication" as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 1692a(2). And the Second Circuit permits claims under § 1692e(3) for allegations that documents were sent on behalf of an attorney without meaningful attorney involvement. *Somerset v. Stephen Einstein & Assocs., P.C.*, 351 F. Supp. 3d 201, 213 (E.D.N.Y. 2019) (citing *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 304 (2d Cir. 2003)).

Claims can be based on an array of false representations by attorneys. In *Somerset*, for example, the court denied the defendant debt collection law firm's motion to dismiss where consumer plaintiff alleged that "meaningful review of the underlying judgment would have revealed their reliance on sewer service in light of the agents used to obtain the default judgment." *Id.* (referencing *Sykes*) (fact that process server was a malefactor in *Sykes* should have put firm on at least constructive notice that the judgment they were enforcing might be the product of sewer service); *see also Michelo v. Nat'l Collegiate Student Loan Tr. 2007-2*, 419 F. Supp. 3d 668, 701 (S.D.N.Y. 2019) (attorney's filing of spurious debt collection lawsuits); *Baltazar v. Houslanger & Associates*, 2018 WL 3941943, at *16–17 (E.D.N.Y. 2018) (attempt to enforce sewer service judgment without reviewing case file); *Musah v. Houslanger & Assocs., PLLC*, 962 F.Supp.2d 636, 640–41 (S.D.N.Y. 2013) (attempt to enforce judgment without reviewing case file). Here, Selip took action to collect the alleged debt, including filing the affidavit of service through J&E and opposing the motion to dismiss. The affidavit of service was a communication under the meaning of 1692a(2) because it directly conveys information regarding a debt collection suit to a putative debtor who must examine it to challenge service. Yet Selip conducted no meaningful

review of the affidavit of service.

Third, Selip argues that "the FDCPA does not apply where an attorney is interposed as an intermediary between a debt collector and a consumer." Selip Mem. of L. at 12. Ms. Wilson was unrepresented when the sewer service occurred and when she received a notice from the court that a lawsuit was initiated against her. Though she sought and obtained legal counsel thereafter, that is irrelevant to the validity of her claim. Under Selip's view, a debt collector would be allowed to freely violate the FDCPA as long as the consumer eventually obtains counsel. That absurd interpretation is not the rule, and nothing in the FDCPA "impl[ies] immunity for debt collection practices otherwise forbidden by the Act simply because those debt collection practices are directed at a consumer's attorney." *Villalba,* 2022 WL 900538, at *9; *see also Rosa v. Mandarich L. Grp., LLP*, No. 22-CV-4720 (LJL), 2024 WL 871209 at *9 (S.D.N.Y. Feb. 29, 2024) ("The substantive provisions of the FDCPA that are directed to abusive, misleading, or unfair or unconscionable conduct 'do not designate any class of persons, such as lawyers, who can be abused, mislead, etc., by debt collectors with impunity.'" (quotations omitted)).

Both 1692e and 1692f broadly prohibit "*any* false, deceptive, or misleading representation or means in connection with the collection of *any* debt," and "unfair and unconscionable means to collect or attempt to collect *any* debt." 15 U.S.C.A. §§ 1692e and 1692f (emphasis added). Neither specify to whom a representation must be directed to be covered by the FDCPA. In contrast, other provisions, such as § 1692c, "explicitly refer[ ] to the 'consumer' and clearly and necessarily distinguish[ ] 'consumers' from 'attorneys' and other third parties," showing that Congress knew how to narrow the statute when it wanted to. *Rosa v. Mandarich L. Grp., LLP*, No. 22-CV-4720 (LJL), 2024 WL 871209 at *9 (S.D.N.Y. Feb. 29, 2024) (*quoting Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1303 (11th Cir. 2015) (*citing* 15 U.S.C. § 1692c). As a result, courts have

repeatedly held that the FDCPA covers communications to counsel. In *Rosa* for example, the court held that a letter sent to a debtor's attorney was a communication under the FDCPA. 2024 WL 871209, at \*9.

Selip ignores this caselaw, instead relying on a non-precedential summary order quoting dicta, *Gabriele v. Am. Home Mortg. Servicing, Inc*., 503 F. App'x 89 (2d Cir. 2012) (*quoting Kropelnicki v. Siegel*, 290 F.3d 118 (2d Cir. 2002) ("we assume the attorney, rather than the FDCPA, will protect the consumer from a debt collector's fraudulent or harassing behavior. However, this is not an issue on which we need to rule today.")). But the court in *Gabriele* also said that "statements made and actions taken in furtherance of a legal action are not, in and of themselves, exempt from liability under the FDCPA," and ultimately dismissed the claim for other reasons—because the misrepresentations were not material or believable, and would not "have prevented the least sophisticated consumer from responding to or disputing the action." *Gabriele v. Am. Home Mortg. Servicing, Inc*., 503 F. App'x 89, 95 (2d Cir. 2012). Here, the misrepresentations were material because the affidavit of service falsely claimed to have effectuated service upon Ms. Wilson, materially impacting the case by leading the court system and Ms. Wilson to believe that the court had personal jurisdiction over the collection lawsuit, and forcing Ms. Wilson to continue defending the action.

More to the point, in published decisions since *Gabriele*, the Second Circuit has made clear that debt collectors are liable under the FDCPA for actions taken in litigation. *See, e.g., Arias*, 875 F.3d 128, 137 ("debt collectors do not have immunity from FDCPA liability for their litigation conduct"); *Cohen v. Rosicki, Rosicki & Assocs., P.C*., 897 F.3d 75, 82 (2d Cir. 2018) (FDCPA applies to foreclosure litigation) *see also Sykes,* 757 F.Supp.2d 413, 424 (debt collection law firms violate the FDCPA by using false affidavits of service, "misleading both the Civil Court and

consumer-defendants").

Selip argues that Ms. Wilson's decision-making as "the least sophisticated consumer" was not affected by the affidavit of service or Selip's conduct because she "was certain that she had not been served." Selip Mem. at 12. Courts have repeatedly rejected similar arguments because a reasonable consumer being pursued on a debt she knows is invalid would nevertheless believe that the plaintiff is still trying to hold her liable and might succeed, as Ms. Wilson did. *See, e.g. Villalba*, 2022 WL 900538, at *18 (continuing court hearing on motion to vacating judgment "could have reasonably led Galeas to believe he owed money on a default judgment, regardless of whether he knew he had not been served in the underlying suit."); *Hunter v. Palisades Acquisition XVI, LLC*, No. 16 CIV. 8779 (ER), 2017 WL 5513636, at *8 (S.D.N.Y. Nov. 16, 2017) (same).

Fourth, Selip argues that their continued prosecution of the case was not in bad faith and therefore did not violate the FDCPA because they could not be expected to "throw in the towel" on a motion to dismiss, particularly given that the court scheduled a traverse hearing rather than dismissing the case outright. Selip Mem. at 12. This characterization minimizes and abridges Selip's bad faith conduct. Selip deliberately engaged a notorious sewer server and sewer service agency as part of a scheme to obtain default judgments against consumers like Ms. Wilson. FAC at ¶ 2. Selip received the false affidavit of service on Ms. Wilson as part of a batch of affidavits signed by Lamb attesting to impossible attempts at service of Selip complaints, yet allowed the affidavit to be filed anyway. *Id*. at ¶¶ 76-110. Selip further ratified Lamb's misconduct by opposing Ms. Wilson's motion to dismiss, which showed overwhelming evidence of fraud that Selip already knew or should have known about. *Id*. at ¶ 142. Selip argues that Ms. Wilson should have provided medical records to document she was in the hospital on date of service. Selip Mem. at 4. But that would not matter. Like 98.2% of the 1,002 cases Lamb "served" for J&E in 2023, FAC ¶¶ 111,

120, Lamb alleged substitute service. This is the most pernicious type of sewer service because it requires the consumer to prove a negative: the person served does not exist. During this period, Selip obtained a small portion of Lamb's logbook for the day Ms. Wilson was allegedly served, highlighting the objective impossibility of Lamb's claims of service. *Id*. at ¶ 148. Finally, the day before the scheduled traverse hearing, Selip provided this record to Ms. Wilson's attorneys and then made a second settlement offer, demanding in exchange that Ms. Wilson release her claims against Selip and Synchrony Bank, and offering that "going forward, our office is willing to take a look at any cases that you have wherein the process server is Benjamin Lamb." *Id*. at ¶¶ 146-150.

Selip's conduct here was an attempt to leverage the favor of discontinuing the case, and of considering to discontinue other cases, where Lamb was the process server – implying that Selip was well-aware that Lamb had engaged in sewer service, but was only willing to discontinue if the defendant released them from liability for such claims as those they now ask this court to dismiss. Selip has employed the same strategy in other civil court cases. *Id*. at ¶ 144-145. Such conduct smacks of bad faith and violates the FDCPA.

## C.     PLAINTIFF HAS STATED A CLAIM UNDER GENERAL BUSINESS LAW § 349 AGAINST ALL THREE DEFENDANTS

To state a claim under GBL § 349, a plaintiff must plead: (1) the defendant's conduct was consumer-oriented; (2) the defendant's act or practice was deceptive or misleading in a material way; and (3) the plaintiff suffered an injury as a result of the deception." *Himmelstein, McConnell, Gribben, Donoghue & Joseph, LLP v. Matthew Bender & Co., Inc.,* 37 N.Y.3d 169, 171 N.E.3d 1192 (2021). "A defendant's actions are materially misleading when they are 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Himmelstein*, 37 N.Y.3d 169, 178 (quoting *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (1999)).

Defendants' conduct meets all three prongs. First, their conduct was directed towards consumers at large because they file consumer collection suits in bulk and engage in sewer service on a regular basis as part of a scheme to obtain default judgments. *See, e.g.*, *Villalba* at \*17; *Guzman*, 2018 WL 1665252, at \*12. Second, the conduct is materially misleading for the same reason it is deceptive under the FDCPA—the affidavit of service is false, as were Selip's continued representations that Ms. Wilson was properly served, and they were likely to mislead a reasonable consumer into believing that the suit was valid. *Guzman*, 2018 WL 1665252, at \*12; *Villalba*, 2022 WL 900538, at \*17; *Hunter v. Palisades Acquisition XVI, LLC*, No. 16-CV-8779 (ER), 2017 WL 5513636, at \*8 (S.D.N.Y. Nov. 16, 2017). And finally, the conduct harmed Ms. Wilson, who expended time and money preparing her motion to dismiss and suffered emotional distress resulting from the uncertainty and stress of the prolonged, illegitimate court proceeding.

J&E and Lamb do not advance any arguments to dismiss Ms. Wilson's GBL 349 claim, and Selip does not dispute that her claim satisfies the first and third elements, instead focusing on the second element. Selip first contends, without explanation, that the claim "fails for substantially the same reasons as her FDCPA claim." To the contrary, both claims succeed because, as discussed above, Defendants' conduct was plainly deceptive and harmed Ms. Wilson.

Selip next argues that their conduct was not deceptive because "conduct that is improper but does not mislead the plaintiff in a material way does not constitute 'deceptive acts' within the meaning of GBL 349." (Selip Mem. at 13 (quoting *Varela v. Investors Ins. Holding Corp.*, 81 N.Y.2d 958, 960 (1993)). As an initial matter, Ms. Wilson was misled—even though she knew she had not been served, she believed the court proceeding was valid. And Selip's apparent concession that its conduct was improper deliberately misstates the legal standard. Conduct need not *actually* mislead the plaintiff; it need only be "likely to mislead a reasonable consumer acting reasonably

under the circumstances." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25–26 (1995). This is an objective standard, not a subjective one. *Id.* In *Varela*, a defendant obtained a default judgment based on an insurance debt the plaintiffs, the Varelas, did not owe. *Varela*, 81 N.Y.2d at 960. But even after the defendant realized the judgment was invalid, it refused to file a satisfaction of judgment unless the Varelas paid a fee. *Id.* The Court of Appeals held that:

> [D]efendant's actions. . . did not mislead plaintiffs in any material way and did not constitute "deceptive acts" within the meaning of the statute. **Thus, plaintiffs were not "person[s] injured by reason of any violation of [GBL § 349]."**

> *Varela*, 81 N.Y.2d at 961 (citing GBL § 349(h) (emphasis added)).

Importantly, the defendant in *Varela* did not contend the judgment was valid*,* so its conduct was not objectively misleading. And the second sentence in the excerpt, which Selip omits, showed that the court rejected the Varelas' claim principally because the *third* element of a GBL 349 claim—injury resulting from defendant's conduct—was not satisfied. The court was not creating an independent requirement that a plaintiff be actually misled; instead, it was acknowledging that one way a plaintiff *may* establish injury is by demonstrating she was actually deceived. A plaintiff may also establish injury, for example, by demonstrating that the deceptive act forced her to incur a loss. *See, e.g.*, *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 31 (2000).

This reading is supported by the fact that *Varela* predates *Oswego*—the case establishing the objective standard for assessing whether conduct is materially misleading—and is cited in *Oswego* for the rule that a *prima facie* case requires "a showing that defendant is engaging in an act or practice that is deceptive or misleading in a material way *and that plaintiff has been injured by reason thereof*." 85 N.Y.2d at 25 (citing *Varela*, 81 N.Y.2d at 961) (emphasis added).

Selip also cites *Scarola v. Verizon Communications, Inc.*, 146 A.D.3d 692 (1st Dep't 2017)

to suggest their conduct was not likely to mislead a reasonable consumer acting reasonably under the circumstances. In *Scarola*, the court rejected a claim that a defendant was billing and harassing the plaintiff for payment on a closed account, because the conduct was just an "error" and not misleading. *Id.* But as the *Villalba* court explained, *Scarola* is different from a sewer service scheme in which a debt collector's persistent efforts to collect an invalid judgment "could have reasonably led [the consumer] to believe he owed money on a default judgment, *regardless of whether he knew he had not been served in the underlying suit*." 2022 WL 900538, at *18 (emphasis added); *see also Guzman*, 2018 WL 1665252 ("triable issues of fact as to whether the statements in the Affidavit of Service and Affidavit of Merit were false and would be materially misleading to a reasonable consumer"); *Somerset v. Stephen Einstein & Assocs., P.C.*, 351 F. Supp. 3d 201, 207–08 (E.D.N.Y. 2019) (garnishment of wages pursuant to a fraudulent judgment was objectively misleading "because "it is only logical that a consumer under such circumstances might feel compelled to pay the debt or misunderstand their potential rights to challenge the debt"); *Winslow v. Forster & Garbus, LLP*, 2017 WL 6375744, at *13 (E.D.N.Y. Dec. 13, 2017) (false representation in a complaint "might lead a debtor to be confused as to the nature of the debt sought to be collected and is therefore misleading"). Courts have repeatedly held that sewer service is deceptive conduct under GBL § 349's objective standard. *Texidor v. Tromberg, Morris, and Poulin, PLLC,* 2023 WL 8043067 (E.D.N.Y. 2023)*; Mayfield v. Asta Funding, Inc.*, 95 F. Supp. 3d 685 at 700 (S.D.N.Y. 2015).

## D.    PLAINTIFF HAS STATED A CLAIM UNDER JUDICIARY LAW § 487 AGAINST DEFENDANT SELIP

Ms. Wilson sufficiently pled a claim under Judiciary Law § 487(1) against Selip for filing a false affidavit of service with intent to deceive the court and continuing to defend the affidavit of service even though Selip possessed evidence that it was false.

Defendant Selip moves to dismiss Ms. Wilson's Judiciary Law claim, arguing 1) that Ms. Wilson has not alleged "the sort of egregious conduct targeted by the statute," 2) that she failed to allege facts demonstrating that Selip acted with the intent to deceive, and 3) that she failed to plead cognizable actual damages.

Selip asserts that in opposing Wilson's Motion to Dismiss in the Collection Action, S&S argued the law. But Ms. Wilson's claim targets not just that opposition, but Selip's entire course of conduct, which went well beyond legal arguments. Selip intentionally attempted to deceive the court with a fraudulent affidavit of service, first by filing it and then by opposing Ms. Wilson's Motion to Dismiss despite knowing that their process server committed sewer service. This is precisely the conduct actionable under the statute. "[T]he purpose of Judiciary Law § 487(1) is to safeguard an attorney's special obligation of honesty and fair dealing *in the course of litigation* – a pillar of the profession." *Bill Birds, Inc. v. Stein Law Firm, P.C.*, 35 N.Y.3d 173, 178 (N.Y. 2020) (emphasis added).

Selip cites to *Bill Birds* for the proposition that the statute "does not encompass the filing of a pleading or brief containing nonmeritorious legal arguments, as such statements cannot support a claim under the statute." *Id.* at 180. Unfortunately, at least one court has latched onto that sentence of *Bill Birds* and quotes it out of context, *see Remler v. Cona Elder Law, PLLC*, 21-CV-5176(ARR)(LB), 2022 WL 4586243, at *7 (E.D.N.Y. Sept. 29, 2022), and Defendants make the same mistake in their brief. In *Bill Birds*, the Court of Appeals held that clients cannot state § 487 claims *against their own attorneys* for filing nonmeritorious claims, because such deceptions directed against the attorney's own clients do not take place *in the course of litigation* but rather in faulty *legal advice* before a case is even filed. In contrast, *Bill Birds* explained, "the making of a false statement of fact in [a] complaint . . . fell squarely within the scope of the statute because the

misrepresentations at issue were made in the context of an action pending in court." *Bill Birds*, 12

N.Y.3d at 178 (citing *Amalfitano v. Rosenberg*, 12 N.Y.3d 8, 903 N.E.2d 265 (2009)). Here, all of

Defendants' misrepresentations – the filing of the affidavit of service and the Opposition to Ms.

Wilson's Motion to Dismiss – were made in the context of an action pending in court against Ms.

Wilson, so the closer analogue is *Amalfitano*.

Second, contrary to Defendants' claims, Ms. Wilson has pleaded specific facts to support

her allegations that Attorney Defendants intended to deceive her and the state court. Notably, a

very similar Judiciary Law § 487 claim—for falsely representing that debts were not time-barred

in state-court complaints—survived a motion to dismiss in *Diaz v. Portfolio Recovery Assocs.,*

*LLC,* No. 10 CV 3920 ERK, 2012 WL 661456, at *7-8 (E.D.N.Y. Feb. 28, 2012) ("*Diaz* R&R"),

*report and recommendation adopted,* No. 10 CV 3920 MKB CLP, 2012 WL 1882976 (E.D.N.Y.

May 24, 2012), despite defendants' insistence that they had merely been applying "the universally-

accepted understanding of the law in New York at the time" they filed the complaints. *See Diaz*

R&R, 2012 WL 661456, at 6.

Here, as in *Diaz*, Plaintiff has plead a "broad pattern of deceptive filings," specifically

fraudulent affidavits of service, that buttresses her allegations that Selip acted intentionally. Selip's

actions in Ms. Wilson's case are representative of a broader pattern of deceit, demonstrated both

with the firm's longstanding litigation mill and sewer service practices spanning decades and

multiple prior firm names. FAC at ¶¶ 151-176. Selip intentionally used the services of Lamb, a

known practitioner of sewer service, despite his blatantly suspect service record on

contemporaneous Selip cases. *Id*. at ¶ 125.

Ms. Wilson's allegation that Selip intentionally deceived both her and the court is backed

up by specific allegations that Selip continued to press the lawsuit once on notice that the affidavit

of service was false, and by allegations and evidence that the lawsuit was part of a larger, intentional pattern of deceiving consumers. *Id*. at ¶¶ 141, 148-150, 151-176. This "conduct was well outside the bounds of vigorous advocacy and, as alleged, qualifies as egregious misconduct." *Scott v. Greenberg*, No. 15-CV-05527(MKB), 2017 WL 1214441, at *15 (E.D.N.Y. Sept. 30, 2020).

Finally, as described above, Ms. Wilson has pled actual damages in the form of time, money, and emotional distress relating to defending the suit and litigating the motion to dismiss.

## E. PLAINTIFF HAS STATED A CLAIM FOR NEGLIGENCE AGAINST DEFENDANTS

To state a negligence cause of action, a plaintiff must allege 1) the existence of a duty on the defendant's part to the plaintiff, 2) a breach of this duty, and 3) injury to the plaintiff resulting from that breach. *Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 412 (E.D.N.Y. 2012), *aff'd*, 529 F. App'x 45 (2d Cir. 2013).

Defendants challenge only the duty element. All Defendants contend that they have no duty to Ms. Wilson, and thus her claims for negligence and gross negligence must fail. However, the duty for all Defendants arises from their obligations to not violate their statutory obligations under the FDCPA and GBL § 349. *See e.g. Sanchez v. Ehrlich*, No. 16-CV-8677 (LAP), 2018 WL 2084147, at *6–7 (S.D.N.Y. Mar. 29, 2018) (breach of duties under FDCPA and GBL 349 constitute negligence per se). Selip is obviously a debt collector under the FDCPA. *Arias*, 875 F.3d 128, 137 (the FDCPA applies to the litigating activities of lawyers). Plaintiff alleges the Lamb and J&E are debt collectors because they regularly execute false affidavits of service. FAC ¶¶ 22-24, and provide factual support for the assertion FAC *passim*. Consequently, Lamb and J&E are debt collectors, *see e,g. Sykes* 757 F. Supp. 2d 413, 423, and owe a duty to Ms. Wilson under the FDCPA.  GBL 349 applies to both debt collectors and process servers, *Id*.  *See generally Karlin v.*

*IVF America, Inc.*, 93 N.Y.2d 282, 290 (1999) (GBL § 349 applies to "virtually all economic activity.") And process servers have a separate duty of care to comply with the New York City Administrative Code. *See* N.Y. Admin Code §§ 20-403–20-410; *Elliott v. City of New York*, 747 N.E.2d at 734–737 (violation of a municipal ordinance is evidence of negligence).

Selip therefore owed a duty of care to Ms. Wilson, and Ms. Wilson stated a claim for negligence and gross negligence against them by alleging that Selip prosecuted a debt collection lawsuit against Ms. Wilson based on sewer service when they should have known and actually did know that the affidavit of service was fraudulent.

Defendants J&E and Lamb therefore owed a duty of care to Ms. Wilson to Ms. Wilson to comply with the FDCPA, to take reasonable care in the collection of debts, and to comply with New York City's rules governing process servers. J&E breached all these duties by filing a false affidavit of service signed by Lamb in a debt collection suit against Ms. Wilson, despite possessing a logbook showing the facially implausible service upon Ms. Wilson, and despite overwhelming evidence that Lamb was continuing to perpetrate sewer service. FAC ¶¶ 76-131.

Selip mentions the elements of gross negligence, without addressing the issue separate from its duty argument. In any event, under *Crespo*, intentional misrepresentation of a consumer's rights—such as the consumer's rights as a defendant in litigation, which flow in part from the effectuation of proper service on a defendant—states a claim for gross negligence and punitive in the FDCPA context that must be resolved at trial. *Crespo v. Gutman, Mintz, Baker & Sonnenfeldt, LLP*, No. 22-CV-6599 (JPO), 2025 WL 871637, at *9 (S.D.N.Y. Mar. 20, 2025). The case at bar fits comfortably into that standard at the motion to dismiss stage.

## F.    J&E'S GENERAL DENIAL OF LIABILITY FOR ALL CLAIMS IS UNAVAILING

J&E asserts that Ms. Wilson has failed to state any claim against it because 1) J&E could

not have reasonably known that Lamb was acting improperly, and 2) J&E had no actual knowledge that Lamb acted improperly. J&E cites only to N.Y. GBL § 89-ee to broadly deny any legal culpability here: "A process serving agency is only legally responsible for the acts of each process server . . . if it could reasonably have known that the process server was acting improperly." NY Gen. Bus. Law § 89-ee (McKinney). But J&E is responsible for its own conduct as a debt collector as defined by the FDCPA: it actively engaged him as a process server and accepted, notarized, and filed his sewer service affidavits. It is also liable for Lamb's conduct because Ms. Wilson has demonstrated that J&E knew or should have known that Lamb awas acting improperly.

J&E claims that GBL § 89-ee imposes no duty upon them to "scrutinize" Lamb's logbook entries. But all New York City process serving agencies must "be legally responsible for any failure to act in accordance with the laws and rules governing service of process by each process server to whom it has distributed, assigned or delivered process for service." N.Y.C. Admin. Code § 20-406.2(b). They must conduct monthly reviews of the records of each individual process server to whom they distribute process. RCNY § 2-234a(b)(2)(i)-(ii). Process serving agencies must not distribute process to any process server who "does not display integrity and honesty in his or her process serving activities" or who does not comply with the applicable rules. RCNY § 2-234a(a).

Here, J&E is legally responsible under N.Y.C. Admin. Code § 20-406.2(b) for Lamb's conduct in falsifying an affidavit of service on Ms. Wilson. J&E had every reason to know that this misconduct was occurring. On the same day that J&E employee Melissa A. Cyran notarized Lamb's affidavit of service in the case against Ms. Wilson, J&E also received multiple affidavits of service that plainly demonstrate physically impossible service. FAC at ¶¶ 3, 65. Lamb claimed to serve the summons and complaint on "Chante Wilson" on June 8, 2023, at 3:16 p.m., but also claimed to serve another person at 3:21 p.m. at an address Google Maps shows to be a four minute

drive away. *Id.* at ¶ 148. J&E attempts to trivialize Ms. Wilson's analysis of these contemporaneous affidavits of service by stating that "three minutes to park a car and reach a door seems like more than enough time to Defendant, who routinely bests Google's projected trip times, but J&E's analysis is no more relevant than Plaintiff's."

Further, J&E should have been on high alert to spot Lamb's sewer service on Ms. Wilson. Just two weeks before Lamb claimed to serve Ms. Wilson, J&E's parent company paid Lamb's fine to reinstate his suspended license following his guilty plea to violating process serving rules. *Id.,* ¶ 56. In the electronic logbooks that Lamb kept for J&E in 2023, which J&E is required by New York City to review, Lamb claimed to accomplish successful substitute service in an astounding 98.2% of the 1,002 cases contracted by J&E in 2013 alone. *Id.*, ¶¶ 111, 120. There is no need for J&E to have any actual knowledge that neither Ms. Wilson nor her mother were at home on June 8, 2023, or that a "Chante Wilson" does not exist. Lamb waved abundant red flags to let them know that he was practicing sewer service. And J&E shirked their responsibilities under the law by continuing to contract Lamb's services and by filing the affidavit of service in the debt collection suit against Ms. Wilson.

## III.  CONCLUSION

For the above reasons, Defendants' motions to dismiss should be denied in full.

By: /s/ Ahmad Keshavarz, Esq.
LAW OFFICE OF AHMAD KESHAVARZ
Ahmad Keshavarz, Esq.16 Court St., Suite 2600
Brooklyn, NY 11241
Phone: (718) 522-7900
ahmad@NewYorkConsumerAttorney.com
CAMBA LEGAL SERVICES, INC.
Divya Subrahmanyam, Of Counsel
Matthew Schedler, Of Counsel
Naomi Young, Of Counsel
Elizabeth Miller, General Counsel

20 Snyder Ave.
Brooklyn, NY 11226
Phone: (718) 940-6311
Divya.Subrah@camba.org
Matthew.Schedler@camba.org
Naomi.Young@camba.org