UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ERIKA WILSON,

                Plaintiff,

   -against-

SELIP & STYLIANOU, LLP,
J & E PROCESS SERVERS,
and BENJAMIN LAMB,

                Defendants.
-------------------------------------------------------X

Case No. 1:24-cv-4108 (ALC)


# REPLY MEMORANDUM OF LAW
# IN FURTHER SUPPORT OF
# DEFENDANT SELIP & STYLIANOU, LLP'S MOTION TO DISMISS


**KAUFMAN DOLOWICH LLP**
*Attorneys for Defendant*
*Selip & Stylianou, LLP*
135 Crossways Park Drive, Suite 201
Woodbury, New York 11797
Telephone: (516) 681-1100
Facsimile: (516) 681-1101


On the brief:
   Brett A. Scher, Esq.
   Adam M. Marshall, Esq.

# **TABLE OF CONTENTS**

ARGUMENT ...........................................................................................................................1

POINT I
THE AMENDED COMPLAINT SHOULD BE DISMISSED AGAINST S&S
FOR LACK OF SUBJECT MATTER JURISDICTION ......................................................1

    A.    Wilson's Intangible Harm Lacks a Common Law Analogue ..................................1

    B.    Wilson's Tangible Harmes are Unrelated to S&S .....................................................4

POINT II
THE FDCPA CLAIM SHOULD BE DISMISSED AGAINST S&S
FOR FAILURE TO STATE CLAIM ....................................................................................5

POINT III
THE GBL§ 349 CLAIM SHOULD BE DISMISSED AGAINST S&S
FOR FAILURE TO STATE CLAIM ....................................................................................7

POINT IV
THE JUDICIARY LAW § 487 CLAIM SHOULD BE DISMISSED AGAINST S&S
FOR FAILURE TO STATE CLAIM ....................................................................................9

POINT V
THE NEGLIGENCE CLAIMS SHOULD BE DISMISSED AGAINST S&S
FOR FAILURE TO STATE CLAIM ..................................................................................10

CONCLUSION .....................................................................................................................10

Defendant Selip & Stylianou, LLP ("S&S"), by its attorneys Kaufman Dolowich LLP, respectfully submits this reply memorandum of law in support of its motion to dismiss the First Amended Complaint (the "Amended Complaint" or "FAC") of Plaintiff Erika Wilson ("Wilson") as against S&S pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## ARGUMENT

## POINT I

### THE AMENDED COMPLAINT SHOULD BE DISMISSED AGAINST S&S FOR LACK OF SUBJECT MATTER JURISDICTION

A. **Wilson's Intangible Harm Lacks a Common Law Analogue**

Wilson does not dispute that her allegations fall well short of the common law requirements for malicious prosecution and abuse of process in New York. She argues, however, that they are close enough to support Article III standing because: (1) S&S has not demonstrated that Synchrony's underlying claim was meritorious; and (2) in Plaintiff's view, the Restatement (Second) of Torts does not expressly preclude malicious prosecution and abuse of process claims predicated on improper service alone. (Pl. Br. at 10-12).[2]

First, S&S has no duty to disprove facts that Wilson failed to allege. Wilson is the master of her own Amended Complaint, and yet none of its 206 paragraphs plead facts to support the conclusion that Wilson did not owe Synchrony the Debt at issue in the Collection Action. Indeed, the Amended Complaint never even pleads the conclusion itself.

Contrary to Wilson's assertion, it makes no difference that she denied owing the Debt in her Answer in the Collection Action. (Pl. Br. at 14). The Amended Complaint nowhere

---

[1] Unless otherwise noted, the capitalized terms used herein have the same meanings as those used in S&S's initial Memorandum of Law in Support (the "Def. Br.") (ECF Doc. 96).

[2] The "Pl. Br." is Wilson's Memorandum of Law in Opposition (ECF Doc. 101).

1

incorporates the allegations in Wilson's Answer, unlike statements she made in other court filings (see FAC at ¶ 141), and the Answer is not attached to the Amended Complaint as a separate exhibit.³  Regardless, the barebones denials in Wilson's Answer would be, at most, "'naked assertion[s]' devoid of 'further factual enhancement,'" which are not entitled to a presumption of truth.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 557 (2007)).

Second, Wilson mischaracterizes the Restatement (Second) of Torts.  Consistent with New York state law, the Restatement makes plain that abuse of process does not encompass acts taken in furtherance of procuring a judgment on the claim(s) asserted in an underlying complaint.  Rather, "[t]he usual case of abuse of process is one of some form of extortion, using the process to put pressure upon the other to compel him to pay **a different debt** or to take **some other action** or refrain from it."  Rest. 2d Torts § 682 (emphasis added).

Likewise, as with New York state law, the Restatement dictates that lack of probable cause and the favorable termination of the underlying proceeding are essential to a claim for wrongful use of civil proceedings (i.e., civil malicious prosecution).  Id. at § 674.  That is, the underlying claim must be "unfounded" and the proceeding must have been terminated in a manner consistent with the plaintiff's innocence.  Id. at cmts. a, j.

Thus, this is not a situation where Wilson is a degree or two removed from her chosen common law analogues – like the plaintiff analogizing unwanted text messages to an intrusion upon seclusion in Gadelhak v. AT&T Servs., Inc., 950 F.3d 458, 462-63 (7th Cir. 2020). (Pl. Br. at 11).  What Wilson has alleged in this case – defective service that did not result in a default judgment against her or *even a request for one* – is so far removed from the common law torts of

---

³ The Answer only appears in Exhibit BB to the Amended Complaint because it was annexed to the Motion to Dismiss Wilson filed in Collection Action.

2

abuse of process and malicious prosecution that no reasonable observer could call them "close."

None of the cases relied upon by Wilson suggest otherwise. As Wilson concedes, the plaintiffs in <u>Onfroy v. Law Offices of Geoffrey T. Mott P.C.</u>, 751 F. Supp. 3d 195, 205 (E.D.N.Y.) and <u>Seaman v. Nat'l Collegiate Student Loan Tr.</u>, 2023 WL 6290622, at *3, 10 (S.D.N.Y. Sept. 27, 2023) attacked the merits of the underlying collection actions, and the <u>Seaman</u> plaintiffs *had judgments entered against them*. (<u>See</u> Pl. Br. at 13). The harm in those cases was obvious.

The plaintiffs in <u>Baptiste-Elmine v. Richland & Falkowski, PLLC</u>, 2025 WL 974346 (E.D.N.Y. Apr. 1, 2025) attacked the merits of the underlying claims too, specifically alleging that the foreclosure complaints filed by the defendants in that action sought to illegally collect on time-barred debts. <u>Id</u>. at *7.

In <u>Viernes v. DNF Assocs., LLC</u>, 582 F. Supp. 3d 738 (D. Haw. 2022), the district court concluded that the underlying lawsuit lacked any probable cause because the defendant was not a licensed collection agency at the time of commencement – an essential requirement in Hawaii. <u>Id</u>. at 750. So, regardless of whether the plaintiff owed the debt, the underlying lawsuit was doomed *from the moment it was filed*. <u>Id</u>. The same cannot be said of the Collection Action.

Finally, Wilson cites <u>Makhnevich v. Bougopoulos</u>, 2022 WL 939409 (E.D.N.Y. Mar. 29, 2022), calling it "directly analogous to this case." (Pl. Br. at 13). But the plaintiff in <u>Makhnevich</u> did not allege "sewer service" alone, as Wilson implies, but rather that the defendants used the false affidavit of service "to obtain a **default judgment**." 2022 WL 939409, at *10 (emphasis added). Again, there was no default judgment entered against Wilson in the Collection Action and not even an application by S&S for entry of a default judgment. S&S accepted Wilson's Answer in the Collection Action.

Wilson's inability to locate a single case with comparable factual allegations speaks

3

volumes. What Wilson is attempting in this action is unprecedented.

B. **Wilson's Tangible Harms are Unrelated to S&S**

Wilson fares no better in her attempt to tie tangible harms to S&S. Citing Baptiste-Elmine, 2025 WL 974346, Wilson contends that the travel costs and time she spent meeting with her counsel to prepare the Motion to Dismiss are traceable to S&S because the Motion to Dismiss was a "predictable effect" of events that S&S purportedly "set in motion." (Pl. Br. at 8).

Baptiste-Elmine is again distinguishable. First, the plaintiffs in Baptiste-Elmine alleged that they specifically incurred costs retaining and meeting with counsel to determine whether they were liable for the time/efforts devoted exclusively to disputing the time-barred debts sought in the respective foreclosure complaints. 2025 WL 974346, at *7. The crux of the Baptiste-Elmine plaintiffs' FDCPA claims against the defendant law firm was that the firm sought to collect debts that were time-barred. Thus, there was an allegedly direct connection between with the costs incurred and the defendant's alleged conduct. Here, however, it was co-defendant Lamb who is alleged to have "sewer served" Wilson. The Motion to Dismiss targeted *his* Affidavit of Service. (FAC, Exhibit "BB").

Second, unlike the Baptiste-Elmine plaintiffs, who claimed to have incurred costs directly related to the harm caused allegedly caused by the defendants, here Wilson chose to make the Motion to Dismiss based on a waivable affirmative defense *months after* she filed her Answer in the Collection Action. There was no threat of default then. Nothing compelled Wilson to challenge personal jurisdiction in December 2023 when she could have just as easily litigated the Collection Action on the merits. Her Motion to Dismiss was optional, and the costs associated therewith cannot be attributed to S&S.

Third, Wilson's characterization of S&S as "the cause" of Lamb's alleged sewer service is

based on implausible conjecture.  (See Pl. Br. at 8-9).  It is absurd for Wilson to suggest that S&S would have wanted Lamb to falsify service or would have knowingly benefitted from it, especially given the fact that the New York courts provide additional, independent notices to defendants in consumer collection cases pursuant to CPLR § 306-D.  (See Def. Br. at 3).  Ethical considerations aside, there is no point faking service when the defendant will inevitably learn of the action in time to appear and defend.

Accordingly, Wilson's claims against S&S should all be dismissed for lack of subject matter jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(1).

## POINT II

### THE FDCPA CLAIM SHOULD BE DISMISSED AGAINST S&S FOR FAILURE TO STATE CLAIM

Wilson offers several arguments in support of her FDCPA claims against S&S, none of which is persuasive.

First, Wilson contends that S&S can be held liable vicariously liable for J&E's filing of the Lamb's "false" Affidavit of Service because S&S supposedly "'knew the affidavit[] of service [was] highly likely to be false.'"  (Pl. Br. at 25) (quoting Sykes v. Mel Harris & Assocs., LLC, 757 F. Supp. 2d 413, n.9 (S.D.N.Y. 2010)).  But Wilson could not even convince the Civil Court that the Affidavit of Service was false despite taking months to prepare and file the Motion to Dismiss.  (FAC, Exhibit "EE").  Wilson does not offer anything more than conjecture as to why S&S "knew" the affidavit of service was false.

Second, Wilson argues that the Amended Complaint states a claim against S&S for lack of "meaningful attorney review" with respect to Lamb's Affidavit of Service because the Affidavit of Service supposedly qualifies as a "communication" under Section 1692a(2) and because, in Wilson's view, a contrary ruling would "fl[y] in the face of [S&S]'s obligations as an officer of

5

the court[.]" (Pl. Br. at 26). Yet even assuming the Affidavit of Service was a "communication," it was *Lamb's* communication – not one by S&S, and thus beyond the purview of a meaningful attorney review claim. See Felberbaum v. Mandarich Law Group, LLP, 2023 WL 1943107, at *1 (2d Cir. Feb. 13, 2023); Carroll v. U.S. Equities Corp., 2025 WL 931971, at *6 (N.D.N.Y. Mar. 27, 2025); Musah v. Houslanger & Assocs., PLLC, 2012 WL 58335293, at *1 n.1 (S.D.N.Y. Nov. 16, 2012) ("Contrary to Plaintiff's suggestion, 15 U.S.C. § 1692e(3) does not mandate a 'meaningful review of the court file,' … but rather simply prohibits '[t]he false representation or implication that any individual is an attorney or any communication is from an attorney.'").

Third, Wilson seeks to downplay the attorney-intermediary rule as the product of a "non-precedential summary order quoting dicta." (Pl. Br. at 29). However, most district courts in the Second Circuit have followed Gabriele v. Am. Home Mortg. Servicing, Inc., 503 Fed. Appx. 89, 94 (2d Cir. 2012) and Kropelnicki v. Siegel, 290 F.3d 118 (2d Cir. 2002) in treating communications with a consumer's attorney differently than communications with an individual consumer. See e.g., White v. Fein, Such, & Crane, LLP, 2023 WL 1767159, at *4-5 (W.D.N.Y. Feb. 3, 2023) (collecting cases); Song v. Tromberg, Morris & Poulin, PLLC, 2021 WL 3931353, at * 2 (E.D.N.Y. Sept. 2, 2021) (collecting cases). Even the district court in Rosa v. Mandarich Law Group, LLP, 2024 WL 871209, at *10 (S.D.N.Y. Feb. 29, 2024), cited by Wilson (Pl. Br. at 28), recognized "that the standard for determining whether particular conduct violates the [FDCPA] is different when the conduct is aimed at a lawyer than when it is aimed at a lawyer than when it is aimed at a consumer." (quoting Emory v. RJM Acquisitions Funding L.L.C., 505 F.3d 769, 775 (7th Cir. 2007).

Here, by any measure, the attorney-intermediary rule dooms Wilson's FDCPA claims concerning S&S's opposition to the Motion to Dismiss and subsequent discussions concerning

6

discontinuance of the Collection Action. See Chowdhury v. Velocity Investments, LLC, 2014 WL 12539348, at *2 (E.D.N.Y. Apr. 15, 2014) ("Even if the affidavits that defendants submitted in opposition to plaintiff's motion to vacate were both materially false and capable of misleading, plaintiff's counsel was interposed as an intermediary in the process. … Thus, the FDCPA's core purpose of protecting unsophisticated consumers from unscrupulous debt collectors was not implicated.").

Finally, Wilson posits that this case is sufficiently analogous to Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP, 875 F.3d 128 (2d Cir. 2017) to support a claim under Section 1692f for unduly prolonging legal proceedings in bad faith. (Pl. Br. at 24). In Arias, however, the defendant law firm allegedly refused to release restrained funds that it knew to be exempt from judgment enforcement while forcing a *pro se* debtor to appear in court for an exemption hearing that the defendant knew it could not win. 875 F.3d at 138. Here, by contrast, Wilson had counsel; there was no money collected or withheld from Wilson; there no judgment entered; and there was no default judgment requested. S&S simply relied on the Affidavit of Service from a process server whose license had been repeatedly renewed by the DWCP and opposed a Motion to Dismiss that was inadequate on its face.

Accordingly, Wilson's cause of action under the FDCPA should be dismissed against S&S for failure to state a claim.

## POINT III

### THE GBL § 349 CLAIM SHOULD BE DISMISSED AGAINST S&S FOR FAILURE TO STATE CLAIM

Wilson concedes that "she knew she had not been served" in the Collection Action, but maintains that she was personally misled for purposes of GBL § 349 because "she believed the

7

court proceeding was valid." (Pl. Br. at 32). Wilson further claims that S&S actions "were likely to mislead a reasonable consumer into believing that the suit was valid." (Id.).

First, Wilson never explains what she means in suggesting that the Collection Action was *not* "valid." The Collection Action was a real lawsuit. There was an index number purchased; there were pleadings; there was motion practice; there was an order; and there was a traverse hearing scheduled.

Second, to the extent Wilson is implying that a reasonable consumer in her position (though not Wilson herself) would have thought she was properly served, the case law does not support Wilson's argument. In Villalba v. Houslanger & Assocs., PLLC, 2018 WL 1665252, at *1-3 (E.D.N.Y. Mar. 28, 2022), the debtor claimed to have learned of a judgment against him nine (9) years after he was allegedly served with process, and after he had been subjected to months of wage garnishments by the defendant law firm. In Hunter v. Palisades Acquisition XVI, LLC, 2017 WL 5513636, at *1-3 (S.D.N.Y. Nov. 16, 2017), the debtor learned of a judgment against her eight (8) years after she was allegedly served, and only after her checking account was frozen by the defendant law firm.

Here, Wilson was confronted with the Affidavit of Service shortly after the Collection Action was commenced. (FAC at ¶ 139). Moreover, the Affidavit of Service referenced an allegedly nonexistent occupant of Wilson's Apartment (Chante Wilson) and a date and time of service on which Wilson was certain the Apartment was vacant. (Id. at ¶ 70). Wilson has never alleged any facts to support the conclusion that any reasonable person in her position would have been fooled by such an affidavit.

Accordingly, Wilson's cause of action under GBL § 349 should be dismissed against S&S for failure to state a claim.

8

**POINT IV**

**THE JUDICIARY LAW § 487 CLAIM SHOULD BE DISMISSED AGAINST S&S FOR FAILURE TO STATE CLAIM**

Wilson' opposition also falls short with respect to Judiciary Law § 487.

First, Wilson contends that the New York Court of Appeals' prohibition on Section 487 claims based on "the filing of a pleading or brief containing nonmeritorious legal arguments" only applies to claims brought against a client's own attorney. (Pl. Br. at 35). The Court of Appeals drew no such distinction in Bill Birds, Inc. v. Stein Law Firm, P.C., 35 N.Y.3d 173, 180 n.3 (N.Y. 2020), as at least one district court in this Circuit has already recognized. Remler v. Cona Elder Law, PLLC, 2022 WL 4586243, at *7 (E.D.N.Y. Sept. 29, 2022). Bill Birds means what it says.

Wilson next cites Diaz v. Portfolio Recovery Assocs., LLC, 2012 WL 661456, at *7-8, *R&R adopted*, 2012 WL 1882976 (E.D.N.Y. May 24, 2012), arguing that scienter can be inferred here based on a "broad pattern of deceptive filings." (Pl. Br. at 36). However, Diaz is inconsistent with the New York Court of Appeals' more recent opinion in Bill Birds and otherwise distinguishable. There, the defendant law firm had allegedly filed time-barred collection cases on a routine basis despite controlling appellate authority demonstrating the untimeliness of such claims. 2012 WL 661456, at *7-8. In this case, Wilson has offered nothing but speculation and conjecture as to a "pattern of deceptive filings."

Third, Wilson argues that she "has pled actual damages in the form of time, money, and emotional distress relating to defending the suit and litigating the motion to dismiss." (Pl. Br. at 37). But "emotional distress" is not pecuniary, as required for a Section 487 claim, and the costs alleged in the Amended Complaint predate S&S's opposition to Wilson's Motion to Dismiss.

Accordingly, Wilson's cause of action under Judiciary Law § 487 should be dismissed for failure to state a claim.

## POINT V

### THE NEGLIGENCE CLAIMS SHOULD BE DISMISSED AGAINST S&S FOR FAILURE TO STATE CLAIM

Wilson mainly argues that her negligence claims against S&S should survive because S&S "prosecuted a debt collection lawsuit against Ms. Wilson based on sewer service when they should have known and actually did know that the affidavit of service was fraudulent." (Pl. Br. at 38).[4]

To reiterate, the allegations in the Amended Complaint do not support Wilson's conclusion. Wilson could not even establish her own whereabouts on the date of service to the satisfaction of the Civil Court, in her Motion to Dismiss.

Accordingly, Wilson's cause of action for negligence and gross negligence should be dismissed against S&S for failure to state a claim.

### CONCLUSION

For all the foregoing reasons, as well as those in its initial motion papers, S&S respectfully requests that this Court grant its motion and dismiss the Amended Complaint against S&S under Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6).

Dated: Woodbury, New York
November 7, 2025

**KAUFMAN DOLOWICH LLP**

By: /s/ Adam M. Marshall
Brett A. Scher, Esq.
Adam M. Marshall, Esq.
*Attorneys for Defendant*
*Selip & Stylianou, LLP*
135 Crossway Park Drive, Suite 201
Woodbury, New York 11797
(516) 681-1100

---

[4] Wilson relies on the FDCPA and GBL § 349 as the basis for the alleged duty. (Pl. Br. at 37-38). Thus, the negligence claims necessarily fail with those statutory claims.